NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220958-U

NO. 4-22-0958

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 14, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Boone County |
| RAPHAEL L. SMITH, | ) | No. 20CF47 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | C. Robert Tobin III, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE DeARMOND delivered the judgment of the court.
Justice Doherty concurred in the judgment.
Justice Turner specially concurred.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the circuit court did not err in dismissing defendant's postconviction petition.

¶ 2    In January 2022, defendant, Raphael L. Smith, pleaded guilty to aggravated unlawful use of a weapon (AUUW). Defendant did not file a postplea motion or a notice of appeal. In September 2022, defendant filed a *pro se* postconviction petition, which the circuit court dismissed for failing to state the gist of a constitutional claim. Defendant appeals, arguing the AUUW statute under which he was convicted is unconstitutional pursuant to the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). We affirm the circuit court's judgment.

¶ 3                                I. BACKGROUND

¶ 4　　　　　　On March 5, 2020, the State charged defendant with AUUW and possession of a firearm without a requisite firearm owner's identification (FOID) card. See 720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2020); 430 ILCS 65/2(a)(1) (West 2020).

¶ 5　　　　　　On January 27, 2022, defendant entered a negotiated guilty plea to AUUW in exchange for a sentence of four years' imprisonment, and the State dismissed the second count. According to the plea's factual basis, officers performed a traffic stop of a vehicle in which defendant was a passenger. The officers' canine unit alerted to the odor of narcotics, and the officers searched the vehicle, where they discovered a handgun in a sock resting in the "passenger side trunk liner." The vehicle's driver, who said she was defendant's girlfriend, told the officers that "she had seen [defendant] with the gun inside the sock at his mom's house," and "[defendant] did not have permission to bring the gun inside the vehicle." Defendant was previously convicted of AUUW in 2007, and he did not have a valid FOID card. The circuit court accepted defendant's plea as knowing and voluntary and sentenced him to four years' imprisonment. Defendant did not file a postplea motion or notice of appeal.

¶ 6　　　　　　On September 26, 2022, defendant filed a *pro se* postconviction petition, arguing he was "coerced by force" to plead guilty, the officers improperly extended the traffic stop, and the officers' search of the vehicle violated defendant's fourth amendment rights (see U.S. Const., amend. IV). The circuit court summarily dismissed the petition on October 5, 2022, finding it failed to state the gist of a constitutional violation.

¶ 7　　　　　　This appeal followed.

¶ 8　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 9　　　　　　As a preliminary matter, we note defendant has abandoned his postconviction petition's allegations on appeal. While this generally results in forfeiture, "a challenge to the

constitutionality of a statute may be raised at any time." (Internal quotation marks omitted.) *In re M.I.*, 2013 IL 113776, ¶ 39, 989 N.E.2d 173. Thus, defendant's argument is not forfeited.

¶ 10 Defendant argues his two AUUW convictions—one in this case and one in a 2007 case—should be vacated because the FOID card requirement found in subsection 24-1.6(a)(3)(C) of the Criminal Code of 2012 (Code) is facially unconstitutional. Our review pertains only to defendant's 2022 conviction. "A statute will be deemed facially unconstitutional only if there is no set of circumstances under which the statute would be valid." *People v. Bochenek*, 2021 IL 125889, ¶ 10, 183 N.E.3d 61. "Statutes are presumed constitutional, and the party challenging the constitutionality of a statute has the burden of clearly establishing its invalidity. A court must construe a statute so as to uphold its constitutionality if reasonably possible." *People v. Gray*, 2017 IL 120958, ¶ 57, 91 N.E.3d 876. We review *de novo* whether a statute is facially unconstitutional. *Bochenek*, 2021 IL 125889, ¶ 9.

¶ 11 Defendant contends his AUUW convictions should be vacated because the Code's FOID card requirement is inconsistent with our nation's historical tradition of firearm regulation. Defendant relies on the test articulated by the United States Supreme Court in *Bruen*, which held a government, when regulating conduct presumptively covered by the second amendment (U.S. Const., amend. II), "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126. In *Bruen*, the Court struck down a New York firearm licensing regime that required individuals to demonstrate "some additional special need" to carry a handgun publicly for self-defense, rather than "issu[ing] licenses to carry based on objective criteria." *Bruen*, 142 S. Ct. at 2122. Defendant insists the Code's FOID card requirement is unconstitutional, pursuant to *Bruen*, because it diverges from this country's history of firearm regulation.

¶ 12        A. *Bruen* Did Not Find Shall-Issue Licensing Regimes Unconstitutional

¶ 13        Section 24-1.6(a)(1), (a)(3)(C) of the Code, which contains the FOID card requirement, provides:

> "(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly: (1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, *** any pistol, revolver, stun gun or taser or other firearm; [and] *** (3) One of the following factors is present: *** (C) the person possessing the firearm has not been issued a currently valid Firearm Owner's Identification Card." 720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2020).

To obtain a FOID card, an individual must submit an application and evidence showing, *inter alia*, they are not a convicted felon, they have not been convicted of domestic battery or a substantially similar offense, they have not been convicted of battery or a substantially similar offense in the last five years, they are not addicted to narcotics, and they have not been a patient in a mental health facility in the last five years. See 430 ILCS 65/4(a)(1), (a)(2) (West 2020). "[E]very applicant found qualified *** shall be entitled to a [FOID] Card," and all applications shall be approved or denied "within 30 days from the date they are received." 430 ILCS 65/5(a) (West 2020).

¶ 14        The FOID card application process constitutes a shall-issue licensing regime, which *Bruen* did not find unconstitutional. See 720 ILCS 5/24-1.6(a)(1), (a)(3)(C) (West 2020); 430 ILCS 65/5(a) (West 2020); *Bruen*, 142 S. Ct. at 2138 n.9. The Court pointedly differentiated between may-issue licensing regimes, where "authorities have discretion to deny concealed-carry

- 4 -

licenses even when the applicant satisfies the statutory criteria," and shall-issue licensing regimes, where "authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." *Bruen*, 142 S. Ct. at 2123-24. The Court held the New York licensing regime in question was an unconstitutional may-issue regime, but it cautioned its holding should not be misconstrued as finding existing shall-issue regimes unconstitutional:

"To be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes, under which 'a general desire for self-defense is sufficient to obtain a [permit].' [Citation.] Because these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry. [Citation.] Rather, it appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.' [Citation.]" *Bruen*, 142 S. Ct. at 2138 n.9.

¶ 15 *Bruen*'s concurrences reiterated the decision's boundaries. Justice Kavanaugh's concurrence, which Chief Justice Roberts joined, emphasized, "[T]he Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense. In particular, the Court's decision does not affect the existing licensing regimes—known as 'shall-issue' regimes—that are employed in 43 States." *Bruen*, 142 S. Ct. at 2161 (Kavanaugh,

J., concurring, joined by Roberts, C.J.). Justice Alito's concurrence asserted, "Our holding decides nothing about *** the requirements that must be met to buy a gun. *** Nor have we disturbed anything we said in *Heller* or [*McDonald*] about restrictions that may be imposed on the possession or carrying of guns." *Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring). Justice Kavanaugh drove the point home further, declaring, "Going forward, therefore, the 43 States that employ objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so." *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.).

¶ 16          Unlike the licensing regime at issue in *Bruen*, the Firearm Owners Identification Card Act (FOID Card Act) dictates an application must be approved when the applicant satisfies the objective criteria laid out in the act. See 430 ILCS 65/5(a) (West 2020). Officials are not empowered to deny licenses "based on a perceived lack of need or suitability." *Bruen*, 142 S. Ct. at 2123. While *Bruen* did not rule out the possibility that successful challenges may be brought against shall-issue regimes "where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry" (*Bruen*, 142 S. Ct. at 2138 n.9), this case does not present a challenge to those aspects of the FOID Card Act. Under the FOID Card Act, applications are to be processed within 30 days of receipt, and an applicant need only pay for their criminal history record check (430 ILCS 65/4(a-25) (West 2020)) and "a $10 fee and applicable processing fees," which "shall be limited to charges by the State Treasurer for using the electronic online payment system." 430 ILCS 65/5(a) (West 2020). Here, respondent does not argue the FOID Card Act's fees or processing period render it invalid for infringing on his second amendment rights. Defendant briefly mentions these aspects of the statute but fails to analyze their validity. Inadequate development of the argument forfeits it for

purposes of appellate review. See *City of East Peoria v. Melton*, 2023 IL App (4th) 220281, ¶ 52. Consequently, we express no opinion regarding the validity of the FOID Card Act's fees or processing period. We simply find the FOID card application process and the AUUW statute's FOID card requirement are distinguishable from the may-issue licensing regime challenged in *Bruen*.

¶ 17            B. The Historical Analysis Approach Has Already Found Favor With Illinois

Courts

¶ 18            Even if our FOID card requirement was not distinguishable from the New York licensing regime in *Bruen*, Illinois courts have consistently found the requirement constitutional after performing historical analyses.

¶ 19            In articulating the test courts should apply when determining a firearm regulation's constitutionality, *Bruen* rejected the two-step analysis developed by lower courts after *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742 (2010), which "combine[d] history with means-end scrutiny." *Bruen*, 142 S. Ct. at 2125. The Court held the two-step approach was "one step too many," as "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." *Bruen*, 142 S. Ct. at 2127. Instead, the Court specified *Heller* "demands a test rooted in the Second Amendment's text, as informed by history," and it found "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S. Ct. at 2127.

¶ 20            Since *Heller* and *McDonald*, Illinois courts have used historical analyses to find the AUUW statute's FOID card requirement is a constitutional regulation. Applying both a strict scrutiny analysis and the "text, history, and tradition" approach, the First District determined

- 7 -

subsection (a)(3)(C) "does not violate the right to bear arms guaranteed under the second amendment." *People v. Taylor*, 2013 IL App (1st) 110166, ¶ 32, 3 N.E.3d 288. In *People v. Mosley*, 2015 IL 115872, ¶ 36, 33 N.E.3d 137 (favorably citing *Taylor*, 2013 IL App (1st) 110166, ¶¶ 28-32), our supreme court found "the FOID card requirement of subsection (a)(3)(C) is consistent with [the Illinois Supreme Court's] recognition that the second amendment right to possess firearms is still subject to meaningful regulation." (Internal quotation marks omitted.) "Simply put, under *Mosley* and *Taylor*, it is constitutional to require an individual to comply with a licensure process before permitting that person to possess a handgun in Illinois." *People v. Wiggins*, 2016 IL App (1st) 153163, ¶ 81, 68 N.E.3d 457.

¶ 21　　　　Defendant acknowledges these cases and their holdings, but he argues they are irrelevant because they preceded *Bruen*. However, as previously discussed, *Bruen* repeatedly distinguished between may-issue and shall-issue licensing regimes, and it explicitly excepted shall-issue regimes from its holding. See *Bruen*, 142 S. Ct. at 2123-24, 2138 n.9, 2161 (Kavanaugh, J., concurring, joined by Roberts, C.J.). While defendant urges us to dismiss this distinguishing language as mere *dicta*, we will not ignore *Bruen*'s unambiguous efforts to exclude shall-issue regimes from its decision.

¶ 22　　　　*Bruen* requires courts to determine whether a firearm regulation is part of our nation's historical tradition. *Bruen*, 142 S. Ct. at 2126-27. Illinois courts have repeatedly performed historical analyses of subsection (a)(3)(C) and found it constitutional. See *Mosley*, 2015 IL 115872, ¶¶ 34-36; *Wiggins*, 2016 IL App (1st) 153163, ¶¶ 76-81; *Taylor*, 2013 IL App (1st) 110166, ¶¶ 31-32. Additionally, *Bruen* repeatedly distinguished between may-issue and shall-issue licensing regimes and found shall-issue licensing regimes may continue. See *Bruen*,

142 S. Ct. at 2138 n.9, 2161-62 (Kavanaugh, J., concurring, joined by Roberts, C.J.).

Accordingly, we affirm the circuit court's dismissal of his postconviction petition.

¶ 23                                    III. CONCLUSION

¶ 24           For the foregoing reasons, we affirm the circuit court's judgment.

¶ 25           Affirmed.

¶ 26           JUSTICE TURNER, specially concurring:

¶ 27           I concur in the majority order affirming the circuit court's judgment dismissing

defendant's postconviction petition. However, my concurrence is based only on the analysis set

forth in paragraphs 1 through 16 of the majority order (*supra* ¶¶ 1-16), and I take no part in the

majority's analysis in paragraphs 17 through 22 (*supra* ¶¶ 17-22).