2024 IL App (4th) 230428

NO. 4-23-0428

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 20, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Stephenson County |
| LEVI T. BURNS, | ) | No. 22CF68 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Glenn R. Schorsch, III, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Steigmann and Doherty concurred in the judgment and opinion.

**OPINION**

¶ 1        Following a jury trial, defendant, Levi T. Burns, was found guilty of unlawful

possession of a weapon by a felon (UPWF) (720 ILCS 5/24-1.1(a) (West 2022)). The trial court

sentenced defendant to three years in prison. Defendant appeals, arguing that his UPWF conviction

and the predicate offense of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-

1.6(a)(1), (a)(3)(A-5) (West 2020)) violate the second amendment to the United States

Constitution (U.S. Const., amend. II) and article I, section 22, of the Illinois Constitution (Ill.

Const. 1970, art. I, § 22). We affirm.

¶ 2                                I. BACKGROUND

¶ 3        On July 28, 2022, defendant was charged by information with one count of UPWF.

The information alleged that, on March 17, 2022, defendant, a felon, knowingly possessed firearm

ammunition.

¶ 4 On February 7, 2023, the matter proceeded to a jury trial. The parties stipulated that defendant had a prior felony conviction, and the following evidence was adduced. On March 17, 2022, Freeport police officer Justin Holden was monitoring social media accounts, looking for potential violations of the law. Holden testified that he was monitoring Snapchat, a platform where photographs or videos are posted to one's "story" immediately after being taken. Holden observed a video posted to "an account entitled, Levi Burns" approximately four minutes earlier. In the video, defendant was holding a black firearm magazine and in the magazine were "gold and red shotgun shells." The video appeared to have been recorded in a bedroom. Defendant was wearing a black shirt and was covered in a dark blanket. Holden testified that he took a recording of the video on a separate work phone. The video was played for the jury.

¶ 5 Approximately 90 minutes after Holden observed the video, he and other officers responded to defendant's address. When they arrived, Holden explained why he was there, and defendant allowed the officers inside. Defendant showed them the bedroom where he took the video. Holden testified that defendant was wearing the same shirt he wore in the video, and Holden saw the blanket from the video on the floor. The officers did not locate a magazine or ammunition at defendant's residence, and defendant explained that his friend, King Stevenson, owned them. The officers then went to Stevenson's residence and recovered from Stevenson the same magazine and ammunition defendant was holding in the video.

¶ 6 Stevenson explained that the police arrived at his residence approximately 15 minutes after he left defendant's home. Prior to that time, Stevenson had been at defendant's residence for about 50 minutes. Stevenson had with him at defendant's home the magazine and ammunition for his Centurion shotgun that he owned. Stevenson explained that he had allowed

defendant to hold the magazine and was in the room when defendant made the video in which he was holding the ammunition.

¶ 7        The jury found defendant guilty. On February 8, 2023, defendant filed a motion for a new trial, arguing, *inter alia*, that the State failed to prove that the ammunition defendant possessed was "functional ammunition" and that the trial court erred in admitting the Snapchat video. The court denied the motion for a new trial and sentenced defendant to three years in prison. This appeal followed.

¶ 8                                    II. ANALYSIS

¶ 9        On appeal, defendant argues that we should reverse his conviction for UPWF because the UPWF statute violates the second amendment to the United States Constitution (U.S. Const., amend. II) and article I, section 22, of the Illinois Constitution (Ill. Const. 1970, art. I, § 22). He also argues that his UPWF conviction should be reversed because the predicate offense for that conviction was his prior conviction for AUUW, and the AUUW statute also violates the United States and Illinois Constitutions.

¶ 10        A person raising a constitutional challenge to a statute carries the heavy burden of rebutting the strong judicial presumption that the challenged statute is constitutional. *People v. Rizzo*, 2016 IL 118599, ¶ 23. To overcome this presumption, the challenging party must clearly establish that the statute violates the constitution. *Rizzo*, 2016 IL 118599, ¶ 23. Courts have a duty to uphold the constitutionality of a statute whenever reasonably possible, resolving doubts in favor of the statute's validity. *Rizzo*, 2016 IL 118599, ¶ 23. Whether a statute is constitutional is a matter of law that we review *de novo*. *Rizzo*, 2016 IL 118599, ¶ 23.

¶ 11        A constitutional challenge to a statute may be either facial or as applied. *Rizzo*, 2016 IL 118599, ¶ 24. A facial challenge requires the challenging party to show that the statute is

unconstitutional under any set of facts, while an as-applied challenge depends on the particular facts and circumstances of the party. *Rizzo*, 2016 IL 118599, ¶ 24. Challengers raising a facial challenge carry a particularly heavy burden, as the fact that the statute might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid. *Rizzo*, 2016 IL 118599, ¶ 24.

¶ 12        A. Whether Defendant's Conviction for UPWF Violates the Second Amendment

¶ 13        Defendant first argues that his conviction for UPWF violates the second amendment both facially and as applied to him pursuant to the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

¶ 14        The second amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. The United States Supreme Court has "recognized that the Second and Fourteenth Amendments [(U.S. Const., amends. II, XIV)] protect the right of an ordinary, law-abiding citizen to possess a handgun" inside and outside the home "for self-defense." *Bruen*, 597 U.S. at 8-9; *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008) (holding that the second amendment confers an individual right to keep and bear arms); *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010) (holding that the fourteenth amendment incorporates the second amendment, rendering the second amendment applicable to the states).

¶ 15        In *Bruen*, the Supreme Court announced a test for assessing the constitutional validity of laws seeking to regulate conduct protected by the second amendment. The Court explained that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17. To justify regulation of that protected conduct, "the government must demonstrate that the regulation is consistent with

this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. Thus, "[o]nly if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " *Bruen*, 597 U.S. at 17 (quoting *Konigsberg v. State Bar of California*, 366 U.S. 36, 50 n.10 (1961)). Under this framework, the Court concluded that a New York firearm licensing regime that required individuals to show a "special need for self-defense" to carry a firearm in public violated citizens' right to bear arms. *Bruen*, 597 U.S. at 11, 71. The Court reasoned, after analyzing the Anglo-American history of regulating the public carry of weapons, that there was no showing that New York's firearm licensing regime was supported by "an American tradition justifying" it. *Bruen*, 597 U.S. at 11, 70.

¶ 16        Defendant challenges the constitutionality of section 24-1.1(a) of the Criminal Code of 2012 (Code), which provides, in part,

> "It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2022).

Defendant contends that his conduct of possessing firearm ammunition in his home was covered by the plain text of the second amendment and section 24-1.1(a) regulates that conduct. Defendant thus argues that, per the framework announced in *Bruen*, section 24-1.1(a) is unconstitutional on its face and as applied to him because the State cannot prove that the statute is consistent with the United States's historical tradition of firearm regulation. The State responds that defendant does not meet the threshold for his conduct to be constitutionally protected because, as a felon,

defendant is not a part of the "People" contemplated by the second amendment. Thus, the State argues, *Bruen* does not apply to defendant.

¶ 17       Initially, we note that we are unable to address defendant's as-applied challenge, which he raises for the first time on appeal, because there is not a sufficiently developed evidentiary record upon which to analyze his argument. Because as-applied constitutional challenges are, by definition, dependent on the specific facts and circumstances of the person raising the challenge, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review. *People v. Harris*, 2018 IL 121932, ¶ 39. Indeed, a court is incapable of making an as-applied determination of unconstitutionality when no evidentiary hearing has occurred and no findings of fact have been made. *Harris*, 2018 IL 121932, ¶ 39. Absent an evidentiary record, any finding that a statute is unconstitutional as applied to the challenging party is premature. *Harris*, 2018 IL 121932, ¶ 39. Because defendant did not raise this issue in the trial court, no factual findings were made related to defendant's prior conviction or how it pertained to his present claim relating to *Bruen*. Accordingly, any finding that section 24-1.1(a) is unconstitutional as applied to defendant would be premature.

¶ 18       As to defendant's facial challenge, we find *People v. Baker*, 2023 IL App (1st) 220328, instructive. In *Baker*, the defendant argued that section 24-1.1(a) of the Code was unconstitutional under the second amendment as applied to him, given the framework announced in *Bruen*. *Baker*, 2023 IL App (1st) 220328, ¶¶ 33, 37. The appellate court concluded that defendant could not challenge the constitutionality of section 24-1.1(a), because, as a felon, "*Bruen* just does not apply to him." *Baker*, 2023 IL App (1st) 220328, ¶ 37. The court explained that *Bruen* "could not have been more clear that its newly announced test applied only to laws that attempted to regulate the gun possession of 'law-abiding citizens,' and not felons like defendant." *Baker*,

2023 IL App (1st) 220328, ¶ 37 (quoting *Bruen*, 597 U.S. at 71). The court noted that the phrase "law-abiding" was used extensively throughout the majority opinion in *Bruen*. *Baker*, 2023 IL App (1st) 220328, ¶ 37. Additionally, the court highlighted that Justice Kavanaugh's concurrence, which was joined by Chief Justice Roberts, asserted that " ' "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ***." ' " *Baker*, 2023 IL App (1st) 220328, ¶ 37 (quoting *Bruen*, 597 U.S. at 81 (Kavanaugh, J., concurring, joined by Roberts, C.J.), quoting *Heller*, 554 U.S. at 626-27). The court concluded that, in light of *Bruen*'s emphasis that its new test applied only to laws seeking to regulate the possession of firearms by " 'law-abiding citizens,' " the defendant was "simply outside the box drawn by *Bruen*." *Baker*, 2023 IL App (1st) 220328, ¶ 37.

¶ 19 Defendant counters that, while the petitioners in *Bruen* were "law-abiding" individuals, nothing in that case suggested that its test was *limited* to "law-abiding" citizens. He further claims that *Baker* improperly relied upon *dicta* in *Heller* stating that felons are not guaranteed the right to bear arms. These arguments are unpersuasive, as we find that *Baker* comports with second amendment jurisprudence. In *Heller*, the Supreme Court held that the second amendment conferred an individual right to keep and bear arms. *Heller*, 554 U.S. at 595. In so holding, the Court noted that the second amendment "elevates above all other interests the right of *law-abiding*, responsible citizens to use arms in defense of hearth and home." (Emphasis added.) *Heller*, 554 U.S. at 635. In accordance with this pronouncement, the Court explained that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 595, 626. In *McDonald*, which held that the second amendment was "fully applicable to the States" (*McDonald*, 561 U.S. at 750), Justice Alito "repeat[ed] those assurances" that prohibitions on possession of firearms by felons were not to be

doubted. *McDonald*, 561 U.S. at 786 (opinion of Alito, J., joined by Roberts, C.J., and Scalia and Kennedy, JJ.). *Bruen* did nothing to contradict the Court's prior determinations that the second amendment protects the rights only of law-abiding citizens to bear arms and that states may prohibit the possession of firearms by felons.

¶ 20    Indeed, this court reached the same conclusion as *Baker* in *People v. Boyce*, 2023 IL App (4th) 221113-U, ¶ 16, an unpublished order. In *Boyce*, the defendant, a felon, argued that section 24-1.1 of the Code was unconstitutional on its face under the *Bruen* framework. *Boyce*, 2023 IL App (4th) 221113-U, ¶ 11. Relying on *Baker*, we similarly concluded that use of the phrase "law-abiding" throughout *Heller* and *Bruen* supported the conclusion that the second amendment does not encompass felons. *Boyce*, 2023 IL App (4th) 221113-U, ¶ 15 ("However, the Court's language in *Bruen* supports the validity of its dictum in *Heller*."). Accordingly, we determined that "the *Bruen* decision does not apply to felons" and concluded that the defendant "failed to show section 24-1.1 is unconstitutional on its face under that decision." *Boyce*, 2023 IL App (4th) 221113-U, ¶ 16.

¶ 21    Given the foregoing, we hold that *Bruen* simply does not apply to defendant. The second and fourteenth amendments protect the right of "law-abiding citizens" to possess handguns. *Bruen*, 597 U.S. at 9-10. *Bruen*'s historical-tradition test applies to regulations affecting *law-abiding* citizens' possession of firearms. See *Bruen*, 597 U.S. at 71 (holding that New York's proper-cause requirement was unconstitutional where it prevented "law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms"); *Baker*, 2023 IL App (1st) 220328, ¶ 37 (concluding that *Bruen* applies only to law-abiding citizens); *Boyce*, 2023 IL App (4th) 221113-U, ¶ 16 (same). As a felon, defendant, by definition, is not a law-abiding citizen. Thus, defendant cannot show that his conduct was presumptively protected by the second

- 8 -

amendment, and therefore, he does not fall within the scope of *Bruen*. As a result, defendant cannot show that section 24-1.1(a) of the Code violates the second amendment on its face under the *Bruen* framework. See *Boyce*, 2023 IL App (4th) 221113-U, ¶ 16 (rejecting facial challenge).

¶ 22   Accordingly, we reject defendant's arguments that section 24-1.1(a) of the Code violates the second amendment on its face and as applied to defendant.

¶ 23   B. Whether Defendant's Conviction for UPWF Violates the Illinois Constitution

¶ 24   Defendant argues that, even if section 24-1.1 of the Code does not run afoul of the second amendment, it violates article I, section 22, of the Illinois Constitution on its face because our state constitution provides "greater protections" than the second amendment.

¶ 25   Article I, section 22, provides, "Subject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. Const. 1970, art. I, § 22. This provision does not mirror the second amendment but "adds the words '[s]ubject only to the police power,' omits prefatory language concerning the importance of a militia, and substitutes 'the individual citizen' for 'the people.' " *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 491 (1984) (quoting Ill. Const. 1970, art. I, § 22).

¶ 26   Defendant contends that, even if he does not fall within the scope of "the People" as delineated in the second amendment, the Illinois Constitution "allows him to take part in the right to keep and bear arms as an individual citizen." Defendant contends that this right is not narrowed by the prefatory language, "Subject only to the police power," because preventing felons from possessing firearms would be an improper exercise of police power. See Ill. Const. 1970, art. I, § 22.

¶ 27   "[T]he legislature enjoys wide latitude in prescribing criminal penalties under its police power and has an obligation to protect its citizens from known criminals." *People v.*

*Robinson*, 2011 IL App (1st) 100078, ¶ 17. In fact, Illinois courts have recognized that, in *McDonald*, Justice Alito "noted that federal and state legislatures and local governments have police powers to pass laws that promote the health, safety and general welfare of their citizens." *Robinson*, 2011 IL App (1st) 100078, ¶ 23 (citing *McDonald*, 561 U.S. at 786 (opinion of Alito, J., joined by Roberts, C.J., and Scalia and Kennedy, JJ.)). Thus, even assuming defendant is an "individual citizen" such that he falls under the scope of article I, section 22, contrary to defendant's argument, "the police power includes the power to regulate certain aspects of gun possession and ownership." *Robinson*, 2011 IL App (1st) 100078, ¶ 23. Such regulations include the "longstanding prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 626.

¶ 28 We note that the argument defendant now raises has been repeatedly rejected by this court. For example, in *Boyce*, we highlighted the affirmations in *McDonald* and *Heller* that prohibitions on the possession of firearms by felons would not be doubted. *Boyce*, 2023 IL App (4th) 221113-U, ¶ 18. We determined that, given those affirmations, section 24-1.1 of the Code was a proper exercise of police power, and therefore, the defendant failed to show that the statute violated the Illinois Constitution. *Boyce*, 2023 IL App (4th) 221113-U, ¶ 18. Relying on *Boyce*, we reached the same determination in *People v. Langston*, 2023 IL App (4th) 230162-U, ¶ 25. The same result applies here.

¶ 29 We again conclude that section 24-1.1 of the Code is a proper exercise of police power, and thus, defendant cannot show that this statute violates article 1, section 22, of the Illinois Constitution.

¶ 30 C. Whether Defendant's Conviction for AUUW Violates the Second Amendment

¶ 31 Next, defendant argues that, even if the UPWF statute is constitutional, we should nevertheless reverse his conviction because his prior conviction of AUUW, which served as the predicate offense for his UPWF conviction, violates the second amendment.

¶ 32 As is relevant to defendant, a person commits AUUW where he or she "[c]arries on or about his or her person or in any vehicle or concealed on or about his or her person *** any pistol, revolver, stun gun or taser or other firearm" and "the pistol, revolver, or handgun possessed was uncased, loaded, and immediately accessible at the time of the offense and the person possessing the pistol, revolver, or handgun has not been issued a currently valid license under the Firearm Concealed Carry Act." 720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West 2022).

¶ 33 In 2013, Illinois implemented the Firearm Concealed Carry Act (Concealed Carry Act) to allow qualified individuals to obtain licenses to carry concealed handguns in public. 430 ILCS 66/1 *et seq.* (West 2022). To obtain a concealed carry license (CCL), an individual must not (1) have been found guilty of a misdemeanor involving the use or threat of physical force or violence to any person within five years preceding the date of the application to obtain a CCL, (2) have two or more violations related to impaired driving within the same time period, (3) be the subject of a pending warrant or prosecution that could result in disqualification to possess a firearm, or (4) have been ordered to receive treatment for alcohol or drugs within the preceding five years. 430 ILCS 66/25(3)-(5) (West 2022). Additionally, the individual must (1) be at least 21 years of age, (2) have completed firearms training, and (3) have a valid Firearm Owner's Identification Card (FOID card) and meet the requirements for the issuance of a FOID card. 430 ILCS 66/25(1), (2), (6) (West 2022). If these requirements are met, the Illinois State Police "shall" issue to the applicant a CCL within 90 days. 430 ILCS 66/10(a), (e) (West 2022).

¶ 34 An individual obtains a FOID card by meeting the requirements of the Firearm Owners Identification Card Act (FOID Card Act). 430 ILCS 65/0.01 *et seq.* (West 2022). The FOID Card Act requires a person seeking to acquire or possess a firearm to obtain a FOID card from the Illinois State Police. 430 ILCS 65/2(a)(1) (West 2022). To do so, an applicant must, *inter alia*, pay a $10 fee, submit proof of Illinois residence, establish that he or she is at least 21 years of age, and provide a photograph. 430 ILCS 65/4(a)(2)(i)-(i-5), 4(a)(2)(xiv), 4(a-20), 5(a) (West 2022). The Illinois State Police then conducts a search of its criminal history records and those of the Federal Bureau of Investigation and the Department of Human Services to obtain information regarding felony convictions, mental health and developmental disabilities, or hospitalizations that would disqualify the individual from obtaining a valid FOID card. 430 ILCS 65/3.1(b) (West 2022). If these requirements are met, the Illinois State Police "shall" issue to the applicant a FOID card within 30 days. 430 ILCS 65/5(a) (West 2022).

¶ 35 The AUUW statute incorporates the requirements of the FOID Card Act and Concealed Carry Act by criminalizing noncompliance. 720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5), (a)(3)(C) (West 2022).

¶ 36 Defendant contends that his conviction for AUUW violates the second amendment under the framework announced in *Bruen* because "criminalization of handgun possession in the absence of a FOID card and CCL burdens the individual right [to bear arms] in a manner with no historical analogue." This argument is unpersuasive.

¶ 37 In *Bruen*, the Supreme Court explicitly categorized Illinois as 1 of 43 " 'shall issue' jurisdiction[s], where authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." *Bruen*, 597 U.S. at 13 & n.1 (including 430 ILCS

66/10 (West 2020) in the list of concealed-carry licensing regimes). The Court noted that, while there was no "historical tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense" (*Bruen*, 597 U.S. at 38), "nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes." *Bruen*, 597 U.S. at 38 n.9. The Court explained:

> "Because these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry. [*Heller*, 554 U.S. at 635]. Rather, it appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.' *Ibid.* And they likewise appear to contain only 'narrow, objective, and definite standards' guiding licensing officials, *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151 (1969), rather than requiring the 'appraisal of facts, the exercise of judgment, and the formation of an opinion,' *Cantwell v. Connecticut*, 310 U.S. 296, 305 (1940)—features that typify proper-cause standards like New York's. That said, because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." *Bruen*, 597 U.S. at 38 n.9.

The Court further acknowledged that, "[t]hroughout modern Anglo-American history, the right to keep and bear arms in public has traditionally been subject to well-defined restrictions governing

the intent for which one could carry arms, the manner of carry, or the exceptional circumstances under which one could not carry arms." *Bruen*, 597 U.S. at 38.

¶ 38 Given these principles, the appellate court in *People v. Gunn*, 2023 IL App (1st) 221032, ¶¶ 7, 32, rejected the defendant's argument that the FOID Card Act and the Concealed Carry Act violate the second amendment on their faces pursuant to *Bruen*. In *Gunn*, the defendant was convicted of AUUW for possessing a weapon without a valid FOID card or CCL. *Gunn*, 2023 IL App (1st) 221032, ¶ 5. He argued that his AUUW conviction should be reversed because the FOID Card Act's requirements that an applicant pay a fee and provide personal information were "an impermissible barrier" to the exercise of second amendment rights and the FOID Card Act was inconsistent with the nation's historical tradition of firearm regulation. *Gunn*, 2023 IL App (1st) 221032, ¶ 17. Similarly, the defendant asserted that the Concealed Carry Act's requirements that an individual must have a valid FOID card, undergo a 16-hour firearms training course, and adhere to a 90-day waiting period before a CCL was issued "do not comport with our nation's historic tradition of firearm regulation." *Gunn*, 2023 IL App (1st) 221032, ¶ 25.

¶ 39 Relying on *Bruen*, the court disagreed, concluding that neither statutory scheme violated the second amendment. *Gunn*, 2023 IL App (1st) 221032, ¶ 32. As to the FOID Card Act, the court noted that *Bruen* "explicitly acknowledged that background checks, which are the cornerstone of the FOID Card Act, are permissible." *Gunn*, 2023 IL App (1st) 221032, ¶ 19. The court determined that there was "no need for us to engage in a historical analysis of firearm regulation when the Supreme Court has already done so and explicitly sanctioned the use of background checks." *Gunn*, 2023 IL App (1st) 221032, ¶ 19. Regarding the Concealed Carry Act, the court emphasized that Illinois is a shall-issue jurisdiction, meaning that "the State does not have any discretion to deny a CCL to an applicant who fulfills [the] objective criteria" for issuance

of a CCL. *Gunn*, 2023 IL App (1st) 221032, ¶ 22. The court thus concluded that, unlike the licensing scheme at issue in *Bruen*, "the Illinois statute mandates issuance of FOID cards and CCLs within the framework of what has always been historically acceptable in the United States." *Gunn*, 2023 IL App (1st) 221032, ¶ 22. The court emphasized that the Concealed Carry Act sets forth broadly applicable, well-defined requirements like background checks and the completion of a firearms training course—both of which the Supreme Court explicitly sanctioned in *Bruen* and which, if fulfilled, result in the issuance of a CCL. *Gunn*, 2023 IL App (1st) 221032, ¶ 29. Accordingly, the court held that the FOID Card Act and the Concealed Carry Act "comport[ ] with federal law and, consequently, the AUUW statute does as well." *Gunn*, 2023 IL App (1st) 221032, ¶¶ 19, 30.

¶ 40        Indeed, this court reached a similar conclusion in an unpublished order, *People v. Smith*, 2023 IL App (4th) 220958-U. In *Smith*, the defendant challenged his AUUW conviction for possessing a firearm without a FOID Card on the grounds that the FOID card requirement found in section 24-1.6(a)(3)(C) of the Code was facially unconstitutional under *Bruen*. *Smith*, 2023 IL App (4th) 220958-U, ¶¶ 4, 10. We concluded, like *Gunn*, that (1) Illinois employs a shall-issue licensing regime, (2) *Bruen* expressly distinguished "shall-issue" licensing regimes from "may-issue" schemes, and (3) *Bruen* explicitly found that "shall-issue licensing regimes may continue." *Smith*, 2023 IL App (4th) 220958-U, ¶ 22. Accordingly, we declined to find the AUUW statute's FOID card requirement unconstitutional. See *Smith*, 2023 IL App (4th) 220958-U, ¶ 16 ("We simply find the FOID card application process and the AUUW statute's FOID card requirement are distinguishable from the may-issue licensing regime challenged in *Bruen*.").

¶ 41        Defendant argues that we should disregard *Smith* because it cited pre-*Bruen* cases for its alternate determination that there was a historical basis supporting Illinois's licensing

regime. See *Smith*, 2023 IL App (4th) 220958-U, ¶¶ 18, 22 ("[e]ven if our FOID card requirement was not distinguishable" from the licensing regime struck down in *Bruen*, "Illinois courts have repeatedly performed historical analyses of subsection (a)(3)(C) and found it constitutional" (citing *People v. Mosley*, 2015 IL 115872, ¶¶ 34-36, *People v. Wiggins*, 2016 IL App (1st) 153163, ¶ 76-81, and *People v. Taylor*, 2013 IL App (1st) 110166, ¶¶ 31-32)). We decline to disregard *Smith*. Our decision today rests on our determination, similarly reached by other Illinois courts, that Illinois's licensing regime is a "shall-issue" framework that was endorsed by *Bruen*, unlike the "may-issue" regimes targeted in that case. Accordingly, we do not reach a historical analysis of the AUUW statute, and therefore, we need not rely upon the historical analysis undertaken in *Smith*.

¶ 42     Accordingly, we hold that defendant has failed to establish that subsections (a)(1) and (a)(3)(A-5) of section 24-1.6 of the Code are facially unconstitutional under the second amendment.

¶ 43     D. Whether Defendant's Conviction for AUUW Violates the Illinois Constitution

¶ 44     Finally, defendant argues that his UPWF conviction should be reversed because his prior conviction of AUUW, which served as the predicate offense for his UPWF conviction, violates the Illinois Constitution.

¶ 45     Like his prior arguments pursuant to the Illinois Constitution, defendant contends that he is an "individual citizen" under article I, section 22, of the Illinois Constitution and that Illinois's licensing regime is not a valid exercise of police power. We again reject these arguments.

¶ 46     Even assuming that defendant is an "individual citizen" for purposes of article I, section 22, he provides no coherent argument as to why the AUUW's incorporation of the regulations set forth in the FOID Card Act and Concealed Carry Act would not fall under the

legislature's broad police power. There appears to be no dispute that the FOID Card Act and Concealed Carry Act requirements incorporated by the AUUW statute constitute measures meant to protect the health, safety, and welfare of Illinois citizens—nor could there be any such dispute. See 430 ILCS 65/1 (West 2022) (asserting that requiring FOID cards promotes a system by which law enforcement can identify individuals prohibited from acquiring or possessing firearms and ammunition, which "promote[s] and protect[s] the health, safety and welfare of the public"); *Culp v. Raoul*, 921 F.3d 646, 655 (7th Cir. 2019) (stating that Illinois has an "important interest in promoting public safety by ensuring the ongoing eligibility of who carries a firearm in public" and that the licensing and monitoring scheme of the Concealed Carry Act arose out of the "weighty interest in preventing the public carrying of firearms by individuals with mental illness and felony criminal records"). As previously noted, the "legislature enjoys wide latitude in prescribing criminal penalties under its police power and has an obligation to protect its citizens from known criminals." *Robinson*, 2011 IL App (1st) 100078, ¶ 17.

¶ 47    Even so, defendant responds that we cannot read section 22's prefatory clause so broadly as to limit the protections of the second amendment. To the contrary, the Supreme Court gave reassurances that the right to keep and bear arms is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626. Because "the police power includes the power to regulate certain aspects of gun possession and ownership," and because the licensing requirements incorporated by the AUUW statute promote the State's interest in public safety, we conclude that subsections (a)(1) and (a)(3)(A-5) of section 24-1.6 of the Code are a proper exercise of the State's police power. *Robinson*, 2011 IL App (1st) 100078, ¶ 23. Accordingly, we hold that the AUUW statute does not violate article I, section 22, of the Illinois Constitution. *Robinson*, 2011 IL App (1st) 100078, ¶ 23.

¶ 48                        III. CONCLUSION

¶ 49        For the reasons stated, we affirm defendant's conviction and sentence.

¶ 50        Affirmed.

*People v. Burns*, 2024 IL App (4th) 230428

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Stephenson County, No. 22-CF-68; the Hon. Glenn R. Schorsch III, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Jessica L. Harris, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Carl H. Larson, State's Attorney, of Freeport (Patrick Delfino, David J. Robinson, and Matthew S. Goldman, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |