

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00315-CR

_____

EX PARTE JOHNATHAN DWIGHT HUELL

On Appeal from Criminal District Court No. 4
Tarrant County, Texas
Trial Court No. C-0012158

Before Bassel, Womack, and Wallach, JJ.
Opinion by Justice Wallach

## OPINION

The trial court denied Johnathan Dwight Huell's application for pretrial habeas corpus relief. Huell appeals that ruling, arguing that the statute under which he has been charged—Texas Penal Code Section 46.04, Texas's felon-in-possession statute—is on its face an unconstitutional restriction on the right to bear arms. *See* Tex. Penal Code Ann. § 46.04; *see also Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010) (stating that pretrial habeas application may be used to bring facial challenge to constitutionality of statute that defines charged offense). We conclude that controlling United States Supreme Court case law, including *United States v. Rahimi*, 602 U.S. 680, 144 S. Ct. 1889 (2024), and *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111 (2022), does not support Huell's arguments. Accordingly, we will affirm.

### Background

In June 2019, Huell was convicted of the felony offense of burglary of a habitation with intent to commit a felony—aggravated assault—therein. He was sentenced to six years' confinement in accordance with a plea agreement. In that case, he also signed a plea in bar with repect to a December 2018 charge of assault of a family member by impeding breath. *See* Tex. Penal Code Ann. § 22.01(b)(2).

In December 2023, Huell was charged in separate indictments with two counts of assault by threat by use or exhibition of a firearm. He was also separately indicted for possessing a firearm in violation of Section 46.04. *See* Tex. Penal Code Ann. § 46.04(a). That statute provides that, after a person has been convicted of a felony,

the person commits an offense if the person possesses a firearm before the fifth anniversary of the person's release from confinement.[1] *Id.* § 46.04(a)(1). After those five years have passed, the person may possess a firearm at the person's residence. *Id.* § 46.04(a)(2). Here, the indictment alleged that Huell had been convicted in June 2019 on the burglary offense and that less than five years later, in December 2023, he possessed a firearm. *See id.*

Huell's habeas application presented a facial challenge to the constitutionality of Section 46.04. Huell argued that the charge against him cannot be prosecuted because it violates the Second Amendment as applied to the states through the Fourteenth Amendment.[2] He cited *Bruen* and a pre-*Rahimi* Mississippi district court

---

[1]The statute measures the five-year period from the person's release from confinement or from supervision, whichever is later:

> (a) A person who has been convicted of a felony commits an offense if he possesses a firearm:
>
> (1) after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later; or
>
> (2) after the period described by Subdivision (1), at any location other than the premises at which the person lives.

Tex. Penal Code Ann. § 46.04. The statute also contains three subsections not applicable to Huell. *See id.* § 46.04(a-1), (b), (c). We do not read Huell's habeas application as challenging the constitutionality of these subsections.

[2]Although Huell's aplication stated that it was "brought pursuant to" the federal constitution and Article I, Section 12 of the Texas Constitution, the rest of his

3

opinion, *United States v. Bullock*, 679 F. Supp. 3d 501 (S.D. Miss. 2023), for the proposition that legislatures at the time of this country's founding did not strip felons of the right to bear arms simply because of their status as felons. The State's response discussed the country's history and tradition of disarming dangerous persons but further argued that the trial court did not need to conduct a historical analysis because the Second Amendment's protections apply only to law-abiding citizens.

At the hearing on Huell's application, his argument included discussion of the history of the 1836 Texas Constitution and its drafters' beliefs about the right to bear arms. He argued that any restrictions on that right should be based on location—for example, "[y]ou can't take a gun in an airport"—as opposed to a person's status as a convicted felon. Like in its written response to Huell's habeas application, the State noted that some courts have held that convicted felons are not included in "the people" named in the Second Amendment and, citing *Rahimi*, further argued that even if felons are included in the protections of the Second Amendment, this country "has long barred people who are dangerous from possessing guns."

Both sides submitted as evidence copies of the indictment from Huell's prior burglary offense and the judgment of conviction in that case. Huell also submitted a

application asserted only that Section 46.04 violates the federal constitution. He did not argue that the Texas Constitution provides any greater protection of the right to bear arms than the federal constitution. *See* Tex. Const. art. I, § 23 (stating that "[e]very citizen shall have the right to keep and bear arms in the lawful defence of himself or the State" but expressly providing that "the Legislature shall have power, by law, to regulate the wearing of arms, with a view to prevent crime").

copy of the indictment in this case, the offense report for the two assault-by-threat offenses that Huell was facing in addition to the Section 46.04 charge, and a photograph of the weapon that Huell was charged with possessing. The State produced a copy of the 2018 indictment of Huell alleging that he had assaulted a family member by impeding breath and the plea in bar for that offense; the indictments for the current assault-by-threat offenses and accompanying police report and complainant statements; and a copy of Article I, Section 23 of the Texas Constitution.

After the hearing, the trial court signed an order denying relief. Huell filed this appeal.

**Analysis**

Because Huell raised a facial challenge to Section 46.04, he had to show that no circumstances exist under which the statute would be valid. *See United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987); *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015). Huell's challenge fails, however, because the Second Amendment does not prevent the government from regulating the possession of firearms by felons.

The United States Supreme Court stated in *Heller* that the Second Amendment protects the "right of *law-abiding*, responsible citizens" to possess firearms "in defense of hearth and home" and that "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *District of*

5

*Columbia v. Heller*, 554 U.S. 570, 626, 635, 128 S. Ct. 2783, 2816–17, 2821 (2008) (emphasis added). In fact, the Court referred to those prohibitions as "presumptively lawful regulatory measures." *Id.* at 627 n.26, 128 S. Ct. at 2817 n.26.

Then, in *Bruen*, the Supreme Court created a new historical analysis test for evaluating regulations on an individual's right to bear arms. 597 U.S. at 24, 142 S. Ct. at 2130. The Court focused its analysis on the right of "ordinary, law-abiding citizens" to carry a firearm outside the home. *Id.* at 9, 29, 71, 142 S. Ct. at 2122, 2132–33, 2156 (noting that previous United States Supreme Court cases had "point[ed] toward at least two metrics" for evaluating the constitutionality of gun regulations—"how and why the regulations burden a *law-abiding citizen's* right to armed self-defense"—and holding that New York's firearm licensing requirement "violates the Fourteenth Amendment in that it prevents *law-abiding citizens* with ordinary self-defense needs from exercising their right to keep and bear arms" (emphasis added)); *see id.* at 81, 142 S. Ct. at 2162 (Kavanaugh, J., concurring) (reiterating *Heller*'s statement that nothing in that opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons"). *Bruen* did not overrule *Heller*'s statement that "nothing in [that] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Heller*, 554 U.S. at 626, 128 S. Ct. at 2816–17.

Most recently, in *Rahimi*, the Court upheld a federal law temporarily disarming persons subject to restraining orders. 602 U.S. at 697–98, 144 S. Ct. at 1901. The

6

Court conducted a historical analysis and concluded that two categories of historical laws "confirm[ed] what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 698, 144 S. Ct. at 1901. In considering Rahimi's arguments and clarifying *Bruen*'s holdings, the Court had the opportunity to reject its previous statements about laws restricting firearm possession by felons. Instead, the Court again pointed out its statement in *Heller* that prohibitions on the possession of firearms by felons are presumptively lawful. *Id.* at 699, 144 S. Ct. at 1902 (rejecting Rahimi's argument that *Heller* had invalidated absolute prohibitions of handguns in the home, stating, "*Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons['] . . . , are 'presumptively lawful'").

In light of the above authority, we agree with the El Paso Court of Appeals that "it remains unnecessary to engage in the historical analysis test articulated in *Bruen*" because the United States Supreme Court "[has] left generally undisturbed the regulatory framework that keeps firearms out of the hands of dangerous felons." *Swindle v. State*, No. 08-23-00057-CR, 2023 WL 7171472, at *4 (Tex. App.—El Paso Oct. 31, 2023, pet. ref'd) (mem. op., not designated for publication); *see also Ex parte Strickland*, No. 12-24-00031-CR, 2024 WL 4471121, at *4 (Tex. App.—Tyler Oct. 9, 2024, no pet. h.) (concluding that "if, as alleged in the indictment, the State proves

7

that Appellant is a convicted felon, then he is not a law-abiding citizen entitled to Second Amendment rights under *Bruen*"); *cf. State v. Bonaparte*, 554 P.3d 1245, 1250 (Wash. Ct. App. 2024) (holding that *Bruen*'s framework applies to restrictions on a law-abiding citizen's right to bear arms and was not applicable to the defendant, who had been convicted of felony assault); *People v. Anderson*, 324 Cal. Rptr. 3d 661, 666 (Cal. Ct. App. 2024) (noting that "*Rahimi* reaffirms the portion of *Heller* that cautions, 'nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill'"); *People v. Burns*, 2024 IL App (4th) 230428, ¶ 21 (holding that the "[S]econd and [F]ourteenth [A]mendments protect the right of 'law-abiding citizens' to possess handguns," that "*Bruen*'s historical-tradition test applies to regulations affecting law-abiding citizens' possession of firearms," and that "[a]s a felon, defendant, by definition, is not a law-abiding citizen"). Thus, the Second Amendment does not prohibit the government's restriction of firearm possession by convicted felons. Accordingly, we conclude that Section 46.04 is not unconstitutional on its face.

## Conclusion

Having concluded that Section 46.04 is not facially unconstitutional, we affirm the trial court's order.

/s/ Mike Wallach
Mike Wallach
Justice

Publish

Delivered:  December 12, 2024