NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231164-U

NO. 4-23-1164

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 6, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | McLean County |
| ARTHUR WILLIAM GILBERT, | ) | No. 21CF1059 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Steigmann and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding (1) the trial court did not consider improper factors in reaching its sentencing decision and (2) the statute setting forth the offense for which defendant was convicted was not facially unconstitutional.

¶ 2    Defendant, Arthur William Gilbert, appeals his conviction for unlawful possession of a weapon by a felon. On appeal, defendant argues (1) the trial court considered improper factors in reaching its sentencing decision and (2) the statute setting forth the offense for which he was convicted is facially unconstitutional. For the reasons that follow, we affirm.

¶ 3    I. BACKGROUND

¶ 4    A. Charges

¶ 5    In October 2021, the State charged defendant with multiple counts of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)) and one count of resisting

a peace officer (*id.* § 31-1(a)).

¶ 6                                      B. Guilty Plea

¶ 7          In January 2023, defendant pleaded guilty to one count of unlawful possession of a

weapon by a felon in exchange for the State nol-prossing the remaining counts. The following

factual basis was provided for the plea:

> "If called to trial the State would produce evidence and call
> witnesses that would show on October 10th of 2021, at
> approximately 3:10 in the morning, Bloomington Police responded
> to the area of North Center Street and West Chestnut Street in the
> city of Bloomington, McLean County, for a report of a subject with
> a white T-shirt whom possessed a pistol in his waistband. Officers
> made contact with witnesses who identified this defendant as the
> subject, and advised officers that this defendant had stashed a bottle
> of Grey Goose alcohol and a firearm near some homes on Chestnut
> Street. Officers searched that area and located the bottle of Grey
> Goose and a loaded Bersa series 95 pistol firearm, and at the time
> the defendant was not authorized to possess that firearm based upon
> a prior felony conviction in case 2008-CF-685 in McLean County.
> Since home invasion is not a specifically enumerated offense under
> the forceable felony statute, the State would further produce
> evidence by asking the Court to take judicial notice of 2008-CF-685
> in McLean County, for which the defendant was convicted and pled
> guilty to the offense of home invasion; that the allegation set forth

in that offense alleged that the defendant intentionally caused injury to the named victim; that that allegation would then qualify the conviction for home invasion under the catchall, which entails the use or threat of force for violence against an individual."

¶ 8                                     C. Sentencing

¶ 9          In March 2023, the trial court held a sentencing hearing. The court received a presentence investigation report. Amongst other things, the report provided additional facts related to the instant offense: (1) the scene where police responded was a motor vehicle accident with several individuals present and (2) defendant admitted he "had been drinking through the night into the morning of his arrest." The court also received a group exhibit from the defense of several letters in support of defendant, certificates of accomplishment, and a sex offender risk assessment.

¶ 10         The State recommended defendant, who was facing a prison sentence between 3 and 14 years, be sentenced to 12 years in prison. In support of its recommendation, the State asserted, in part, defendant's conduct threatened serious harm based upon the fact (1) it occurred at the scene of a traffic accident when several people were present, (2) he had been drinking alcohol throughout the night and into the morning, and (3) he discarded the firearm next to a house where anyone may have obtained it.

¶ 11         The defense, in turn, recommended defendant be sentenced to three years in prison. In support of its recommendation, the defense asserted, in part, the trial court should consider the circumstances of the offense:

          "That offense, despite the danger that guns pose, we all can say that, this is not an offense other than one that is possessory in nature. The defendant, a convicted felon, possessed a firearm. The evidence in

- 3 -

this case was that the defendant was seen possessing a firearm and later stashing it, hid it following this car accident. This was not a case in which there was road rage and he pointed a gun at somebody. This is not a case in which he brandished a weapon by any stretch of the imagination, but a case in which the defendant grabbed a firearm, was in possession therefore of that firearm, and then stashed it."

The defense further asserted: "The offense for which we are here now isn't a violent offense like a home invasion ***. No, it's not that at all." The defense maintained its recommended sentence was appropriate, in part, because "of the possessory nature of this offense."

¶ 12    Defendant made a statement in allocution. In part, defendant explained he possessed the firearm because he had "taken it from a person who was threatening to harm themself." Defendant stated, "I regret not doing the lawful thing by turning it over to someone who can legally possess a firearm. However, I can't say I regret taking the firearm because someone I love dearly may have taken their life with it." Defendant further explained he panicked after the "accident happened" and hid the firearm knowing "police would be coming."

¶ 13    After receiving the evidence and hearing from the State, the defense, and defendant, the trial court issued the following oral pronouncement of its decision:

"The Court has considered the pre-sentence report that's been prepared and admitted in this case. I've considered the Defendant's Group Exhibit Number 1 containing reference letters, the sex offender evaluation, and the certificates. I've considered the arguments and evidence presented by counsel, and the defendant's

- 4 -

statement in allocution. I've considered all statutory factors in aggravation and mitigation. I've considered all statutory factors that are relevant or all other factors that are relevant to a sentencing of this nature.

The defendant, this is a difficult case because the defendant has secured a really good job out at Rivian. Rivian is a company that tends to hire people that maybe don't have perfect paths, but they hire them, and many of them pan out for them, and some of them don't. But they are a company that seems to give people an opportunity to succeed, and it does appear that [defendant] has taken advantage of that opportunity and has done very well out at Rivian. There are several letters from co-workers, supervisors, managers that speak very highly of him, and it does appear that he does a good job for Rivian and they value his contribution to their cause. The pre-sentence report reflects a very difficult past coming up through the foster care system. All of those things the Court considers when imposing a sentence.

The Court also considers the defendant's criminal history which started very early on if I'm not mistaken. A stolen vehicle case, if I'm not mistaken, out of Chicago maybe where the defendant introduced himself to the Juvenile Justice system, was in and out of court repeatedly as a juvenile ultimately going to the Department of Juvenile Justice for a period of time where he was paroled, and then

returned, and paroled, and discharged. He graduated to the adult court system with multiple deliveries of a controlled substance, and right out of the gate in 2005 was sentenced to a period of six years in the Department of Corrections on I think it was four different delivery counts. He was paroled on those counts, returned as a parole violator, and ultimately discharged in December of 2008 at which time it wasn't long after that that he was arrested again on a manufacture and delivery of cocaine. This one he was sentenced to the Department of Corrections for 10 years, paroled in 2016, returned as a parole violator in 2017, and discharged in 2018. This sentence was served concurrently or at the same time. I don't know if the sentences were concurrent, although I think they must have been, with the sentences imposed on a separate offense of home invasion and attempt[ed] criminal sexual assault. So sentences imposed on those three counts were 10 years, 10 years, and 16 years.

The defendant was ultimately discharged following one parole violation, ultimately discharged in June of 2018. This offense occurred on October, in October of 2021, so three years after, and so there does seem to be a repeated history of serious criminal involvement. In fact, I can't think of too many more serious offenses than what the defendant has been charged with. The home invasion, attempt criminal sexual assault, the manufacture deliveries, you know, are serious, but the violent nature of that comes as a collateral

and not a direct result of the offense itself.

The home invasion itself is by its very nature a violent offense. [Attempted criminal sexual assault] is by its very nature an extremely violent offense. Now, three years after he's released from prison on the home invasion, sexual assault, and delivery of a controlled substance case, he's in possession of a firearm which, you know, possession of a firearm is, again, by its very nature, it's not like possessing some other form of contraband, it's not like possessing cocaine, it's not like possessing some illegal substance. The only reason to possess a firearm is that you're either going to use it against someone or you're going to protect yourself.

In this situation, certainly the defendant is not entitled to possess a firearm. He asserts that he possessed this firearm to save someone else from harming themself. The action of taking that firearm, if that was the purpose, it should have gone immediately to somebody who could legally possess it. Not that that would excuse the conduct because you can't possess a firearm for any purpose whatsoever, but it would go directly to either a police officer, someone who could legally possess it. That's not what happened here.

There was an accident. According to the presentence report the police were dispatched to the scene of an accident for an armed subject, and then were notified that the person hid the firearm

someplace just off scene, which could also—would also seem to place that firearm some place where just some local kid could come over and find it and potentially harm themself or another person with it. Very violent, very, if not, a very dangerous offense. Everybody—you'd have to be living under a rock not to know the carnage caused by people unlawfully possessing firearms in today's society.

The Court has considered all relevant factors, has considered all evidence in aggravation and mitigation. I believe that an appropriate sentence in this case, the option of probation is not an option, and even if it were, this Court would not impose probation in this case as it would deprecate the seriousness of this offense and be inconsistent with the ends of justice. The Court does believe that the legislature appropriately made this kind of offense a non-probationable offense. For the protection of the public I believe that a sentence to the Department of Corrections is necessary.

The Court believes that an appropriate sentence in this case is 11 years. The Court is going to impose 11 years in the Illinois Department of Corrections to be followed up by a period of one year of mandatory supervised release. The defendant will receive credit for one day previously served in custody. I'm going to impose the minimum $75 fine plus costs as set forth in the supplemental sentencing order."

¶ 14                    D. Motion to Reconsider the Sentence

¶ 15 Defendant filed a timely motion to reconsider the sentence. In his motion, defendant argued the trial court did not sufficiently consider the mitigating evidence and rendered an excessive sentence. Following a hearing, the court denied defendant's motion.

¶ 16 This appeal followed.

¶ 17 II. ANALYSIS

¶ 18 On appeal, defendant argues (1) the trial court considered improper factors in reaching its sentencing decision and (2) the statute setting forth the offense for which he was convicted is facially unconstitutional. The State disagrees with each of defendant's arguments.

¶ 19 A. Challenge to the Sentence

¶ 20 First, defendant argues the trial court considered improper factors in reaching its sentencing decision. Specifically, defendant asserts the court improperly considered factors inherent in the offense, his possession of a firearm and the general societal harm caused by unlawful firearm possession, as aggravating factors to justify a longer sentence. As for the court's consideration of the general societal harm caused by unlawful firearm possession, defendant further asserts the court's comments were improperly based upon the personal beliefs and subjective feelings of the sentencing judge and, to the extent the court considered the potential harm caused by defendant's specific conduct, said conduct did not threaten any harm beyond that considered in the offense and, therefore, should not have been considered.

¶ 21 Defendant concedes he has forfeited his claim of sentencing error by failing to raise it in the trial court but requests it be reviewed as a matter of plain error. See *People v. Hillier*, 237 Ill. 2d 539, 544, 931 N.E.2d 1184, 1187 (2010) ("It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required."). In the sentencing context, this court may disregard a defendant's

forfeiture under the plain-error doctrine when a clear or obvious error occurred and "(1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id*. at 545. The defendant bears the burden of persuasion in establishing plain error. *Id.*

¶ 22       "[T]he trial court is charged with fashioning a sentence based upon the particular circumstances of the individual case." *People v. Fern*, 189 Ill. 2d 48, 55, 723 N.E.2d 207, 210 (1999). A factor implicit in the offense for which the defendant has been convicted generally cannot be used as an aggravating factor in sentencing for that offense. *People v. Milka*, 211 Ill. 2d 150, 184, 810 N.E.2d 33, 52 (2004). This is because we presume the legislature has "considered such implicit factors in classifying the offense and setting the sentencing range." *Id.*

¶ 23       A trial court's sentencing decision which falls within the statutory sentencing range will generally not be disturbed on appeal absent an abuse of discretion. *People v. Alexander*, 239 Ill. 2d 205, 212, 940 N.E.2d 1062, 1066 (2010). However, where, as here, a defendant challenges the trial court's sentencing decision on the ground the court based its sentence upon its consideration of an improper factor, this court's review is *de novo* when determining whether the trial court in fact did so. *People v. Morrow*, 2014 IL App (2d) 130718, ¶ 14, 39 N.E.3d 44. In conducting our review, we begin with "a strong presumption" the court based its decision on proper legal reasoning and, in reviewing that decision, will consider "the record as a whole, rather than focusing on a few words or statements." (Internal quotation marks omitted.) *People v. McGath*, 2017 IL App (4th) 150608, ¶ 64, 83 N.E.3d 671.

¶ 24       After reviewing the trial court's sentencing decision and considering the record as a whole, we are not convinced the trial court committed error, let alone clear or obvious error, in reaching its sentencing decision. The court, after addressing the mitigating evidence, turned to the

aggravating evidence. The court indicated it considered defendant's criminal history, which it then addressed at length.

¶ 25      When addressing defendant's criminal history, the trial court recognized defendant had a history of "serious criminal involvement." That involvement, the court emphasized, included the commission of the violent offenses of home invasion and attempted criminal sexual assault, as well as the offense of manufacture and delivery of cocaine. The court then considered whether the instant offense was consistent with this history. The defense, in support of its sentencing recommendation, minimized the seriousness of the instant offense, distinguishing it from a violent offense like home invasion and emphasizing "the possessory nature" of the offense. The court rejected the defense's attempt to minimize the seriousness of the offense. The court did so by contrasting the potential harm caused by the unlawful possession of a firearm with the potential harm caused by the unlawful possession of some other illicit item.

¶ 26      The trial court, after considering defendant's criminal history and emphasizing the seriousness of the instant offense, turned to the specific factual circumstances of the offense and defendant's explanation for his unlawful conduct. In reviewing the factual circumstances of the offense, the court noted, consistent with the State's comments in support of its sentencing recommendation, defendant unlawfully possessed the firearm at the scene of an accident and hid the firearm where "just some local kid could come over and find it and potentially harm themself or another person with it." At that point, the court noted it was a "[v]ery violent, very, if not, a very dangerous offense. Everybody—you'd have to be living under a rock not to know the carnage caused by people unlawfully possessing firearms in today's society." The court concluded its oral pronouncement by finding an appropriate sentence was 11 years in prison.

¶ 27        This record, considered as a whole, does not show the trial court improperly considered factors inherent in the offense as aggravating factors to justify a longer sentence. While the court commented on defendant's possession of a firearm and the general societal harm caused by unlawful firearm possession, it did so in response to the defense's attempt to minimize the seriousness of the instant offense and in considering whether the offense was consistent with defendant's history of serious criminal involvement. Furthermore, the court's comments as to the societal harm caused by the unlawful possession of firearms were, contrary to defendant's assertion, not based upon the personal beliefs or subjective feelings of the sentencing judge. See *People v. Johnson*, 2023 IL App (5th) 230714, ¶ 27, 230 N.E.3d 231 ("The purpose of the unlawful possession of weapons by a felon statute is to protect the health and safety of the public by deterring possession of weapons by convicted felons, a class of persons that the legislature has determined presents a higher risk of danger to the public when in possession of a weapon." (Internal quotation marks omitted.)). Additionally, the court, contrary to defendant's assertion, appropriately considered the potential harm caused by defendant's specific conduct. As the court noted, not only did defendant unlawfully possess the firearm at the scene of an accident, but he also discarded the firearm next to a house where anyone may have obtained it—potential harm beyond that considered in the offense. We reject defendant's attempt to discount the potential harm caused by this conduct simply because the police recovered the firearm without incident.

¶ 28        In sum, we conclude the trial court did not consider improper factors in reaching its sentencing decision. Because defendant has not established clear or obvious error, we need not proceed further in our analysis under the plain-error doctrine.

¶ 29                        B. Challenge to the Conviction

¶ 30      Second, defendant argues the statute setting forth the offense for which he was convicted is facially unconstitutional. Specifically, defendant asserts section 24-1.1(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.1(a) (West 2020)) violates the second amendment pursuant to the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, v. Bruen*, 597 U.S. 1 (2022).

¶ 31      We begin by noting defendant both pleaded guilty to having committed the offense set forth in section 24-1.1(a) and failed to raise his claim of error in the trial court. See *People v. Jones*, 2021 IL 126432, ¶ 20, 190 N.E.3d 731 ("It is well established that a voluntary guilty plea waives all non-jurisdictional errors or irregularities, including constitutional ones." (Emphasis and internal quotation marks omitted.)). Nonetheless, a guilty plea does not preclude a defendant from arguing a statute is facially unconstitutional and void *ab initio*, a claim which may be raised at any time. *People v. Guevara*, 216 Ill. 2d 533, 542-43, 837 N.E.2d 901, 907 (2005). Defendant's claim of error, therefore, is properly before this court.

¶ 32      The second amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. In *Bruen*, 597 U.S. at 17, 24, the Supreme Court held, "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct" and the government "must then justify its regulation by demonstrating that [the regulation] is consistent with the Nation's historical tradition of firearm regulation."

¶ 33      Since *Bruen*, this court has repeatedly held a defendant's felony conviction makes him not a law-abiding citizen and, therefore, not protected by the second amendment. See *People v. Boyce*, 2023 IL App (4th) 221113-U, ¶ 14; *People v. Langston*, 2023 IL App (4th) 230162-U, ¶ 19; *People v. Leonard*, 2024 IL App (4th) 230413-U, ¶ 15. In fact, following the briefing in this

case, we issued an opinion specifically addressing and rejecting a similar claim that section 24-1.1(a) violated the second amendment pursuant to *Bruen*:

> "[W]e hold that *Bruen* simply does not apply to defendant. The second and fourteenth amendments protect the right of 'law-abiding citizens' to possess handguns. [Citation.] *Bruen*'s historical-tradition test applies to regulations affecting law-abiding citizens' possession of firearms. [Citations.] As a felon, defendant, by definition, is not a law-abiding citizen. Thus, defendant cannot show that his conduct was presumptively protected by the second amendment, and therefore, he does not fall within the scope of *Bruen*. As a result, defendant cannot show that section 24-1.1(a) of the Code violates the second amendment on its face under the *Bruen* framework. [Citation.]" (Emphasis omitted.). *People v. Burns*, 2024 IL App (4th) 230428, ¶ 21.

See also *People v. Box*, 2024 IL App (4th) 230649-U, ¶ 81 (holding the same).We stand by our prior decisions and, for the reasons addressed therein, find section 24-1.1(a) is not facially unconstitutional.

¶ 34                                    III. CONCLUSION

¶ 35          For the reasons stated, we affirm the trial court's judgment.

¶ 36          Affirmed.