NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231397-U

NO. 4-23-1397

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 16, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Henry County |
| AMY J. MALLERY, | ) | No. 22CF285 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Terence M. Patton, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Zenoff and Doherty concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed, holding the record was not sufficiently developed to review defendant's claim that the unlawful possession of a weapon by a felon statute under which she was convicted violated the second amendment to the United States Constitution as applied to her and defendant failed to establish the unlawful possession of a weapon statute facially violated either the United States Constitution or the Illinois Constitution.

¶ 2   Following a stipulated bench trial, defendant, Amy J. Mallery, was convicted of two counts of unlawful possession of a weapon by a felon (UPWF) (720 ILCS 5/24-1.1(a) (West 2022)) and sentenced to concurrent terms of three years' imprisonment. Defendant appeals, arguing that the UPWF statute violates her right to bear arms under the second amendment to United States Constitution (U.S. Const., amend. II), both facially and as applied to her, and facially violates the Illinois Constitution. We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4          Defendant was charged with two counts of UPWF (720 ILCS 5/24-1.1(a) (West 2022)) in that she had been convicted of a felony and knowingly possessed a stun gun and brass knuckles, respectively, about her person. She was also charged with two counts of unlawful use of weapons (*id.* § 24-1(a)(1), (4)) for knowingly possessing a stun gun in a vehicle and knowingly possessing brass knuckles.

¶ 5          The matter proceeded to a stipulated bench trial. The parties stipulated that a police officer performed a traffic stop on a vehicle defendant was driving, which did not have a "registration plate." The officer began inventorying the contents of the vehicle in preparation to have it towed, and he located a stun gun and brass knuckles inside defendant's purse. The parties stipulated to the admission of the following exhibits: (1) a certified copy of defendant's 2009 felony conviction for aggravated methamphetamine manufacturing, (2) the stun gun, and (3) the brass knuckles. Defense counsel argued that the State's evidence was insufficient because the State failed to prove the purported stun gun seized from defendant could send out a current capable of disrupting someone's nervous system or that the brass knuckles seized met the statutory definition.

¶ 6          The trial court found defendant guilty of all four counts and subsequently sentenced her to concurrent terms of two years' imprisonment on each count of UPWF, finding the remaining counts merged. This appeal followed.

¶ 7                                                      II. ANALYSIS

¶ 8          On appeal, defendant argues her convictions must be vacated because the UPWF statute violates her individual right to bear arms under the second amendment to the United States Constitution, both facially and as applied to her. Defendant also argues the UPWF statute

is facially unconstitutional under article I, section 22 of the Illinois Constitution (Ill. Const. 1970, art. I, § 22).

¶ 9    A. Whether Defendant's UPWF Conviction Violates the Second Amendment

¶ 10    We first address defendant's argument that the UPWF statute violates the second amendment to the United States Constitution. The second amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.

¶ 11    The United States Supreme Court has held that the second amendment, applied to the States through the fourteenth amendment (U.S. Const., amend. XIV), protects the right of "an ordinary, law-abiding citizen" to possess a handgun in the home and carry a handgun outside the home for self-defense. *New York Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 8-10 (2022); see *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008) ("[The Second Amendment] surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."). The *Bruen* court held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17. In order to justify regulating such presumptively protected conduct, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

¶ 12    Here, defendant challenges the constitutionality of the UPWF statute, which provides:

> "It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person

has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2022).

¶ 13         "Statutes are presumed constitutional, and to rebut that presumption, the party challenging a statute's constitutionality has the burden of establishing a clear violation." *People v. Bochenek*, 2021 IL 125889, ¶ 10. We must construe a statute so as to preserve its constitutionality if reasonably possible. *Id.* The constitutionality of a statute is a question of law, which is subject to *de novo* review. *People v. Gray*, 2017 IL 120958, ¶ 57.

¶ 14         Here, defendant argues the UPWF statute violates the second amendment both facially and as applied to her. We address each argument in turn.

¶ 15                              1. *As-Applied Challenge*

¶ 16         We first address defendant's argument that the UPWF statute is unconstitutional as applied to her under the *Bruen* standard because there is no historical tradition of regulating the possession of firearms by persons in her situation. Specifically, defendant notes she was not serving a felony sentence or a term of mandatory supervised release at the time she committed the present offenses and her prior felony conviction was for a nonviolent drug offense. Defendant acknowledges she failed to raise her as-applied challenge in the trial court, but she argues we may nevertheless review it because the record is sufficiently developed for a review of her claim.

¶ 17         "[A]n 'as-applied' challenge protests against how a statute was applied in the particular context in which the challenging party acted or proposed to act." *Gray*, 2017 IL 120958, ¶ 58. "An as-applied challenge requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party." *People v. Thompson*, 2015 IL 118151, ¶ 36. Accordingly, when we are presented with an as-applied

- 4 -

challenge, "it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." (Internal quotation marks omitted.) *People v. Harris*, 2018 IL 121932, ¶ 39. "[A] court is not capable of making an as applied determination of unconstitutionality when there has been no evidentiary hearing and no findings of fact. [Citation.] Without an evidentiary record, any finding that a statute is unconstitutional as applied is premature." (Internal quotation marks omitted.) *Id.*

¶ 18        Here, defendant did not raise her as-applied challenge in the trial court, and the trial record contains no information about the facts and circumstances surrounding her predicate felony conviction other than the name of the offense (aggravated methamphetamine manufacturing). No evidence was adduced at the stipulated bench trial concerning defendant's criminal history beyond this one conviction. We note that the presentence investigation report prepared in advance of sentencing reflected a prior felony conviction for aggravated battery. Because no evidentiary hearing was held on defendant's as-applied constitutional challenge, the trial court had no opportunity to hear evidence concerning the facts and circumstances surrounding her aggravated methamphetamine manufacturing conviction or consider evidence concerning defendant's aggravated battery conviction and what impact, if any, this conviction had on her as-applied challenge. The court was not able to make findings concerning defendant's particular circumstances and how they related to her second amendment challenge. Accordingly, we find defendant's as-applied challenge is premature, and we do not address it. See *People v. Burns*, 2024 IL App (4th) 230428, ¶ 17 (holding that the defendant's as-applied challenge to the constitutionality of the UPWF statute was premature where it was not raised in the trial court and, accordingly, no factual findings were made concerning his prior conviction or how it pertained to his second amendment challenge).

¶ 19                                  2. *Facial Challenge*

¶ 20            Defendant also argues that the UPWF statute facially violates the second

amendment under *Bruen* because the State cannot cite any historical analogue that would support

permanently banning any person with a felony conviction from possessing a firearm,

ammunition, or any other weapons qualifying as "arms" within the meaning of the second

amendment. "A statute will be deemed facially unconstitutional only if there is no set of

circumstances under which the statute would be valid." *Bochenek*, 2021 IL 125889, ¶ 10.

¶ 21            Initially, we note that, while the parties agree that stun guns qualify as "arms"

within the meaning of the second amendment (see *People v. Webb*, 2019 IL 122951, ¶ 11), they

disagree as to whether brass knuckles qualify. The State argues that defendant has not shown that

brass knuckles are "arms" protected by the second amendment because she has not shown that

they are in common usage or commonly used for self-defense. See *Heller*, 554 U.S. at 625

("[T]he Second Amendment does not protect those weapons not typically possessed by law-

abiding citizens for lawful purposes."). Defendant argues that brass knuckles are arms protected

under the second amendment because they are commonly owned for self-defense and other

lawful purposes. We do not resolve herein the question of whether brass knuckles are arms

protected by the second amendment. Even assuming they are so protected, we find, for the

reasons stated below, that the UPWF statute does not facially violate the second amendment.

¶ 22            Though not cited by defendant, in *Burns*, this court addressed the question of

whether the UPWF statute facially violates the second amendment under *Bruen* and found that it

did not. *Burns*, 2024 IL App (4th) 230428, ¶ 21. In *Burns*, we held that the historical-traditions

test articulated in *Bruen* applied to "regulations affecting *law-abiding* citizens' possession of

firearms." (Emphasis in original.) *Id.* The *Burns* court found that, because the defendant was a

felon, he was not a law-abiding citizen and his possession of firearm ammunition was not protected by the second amendment. *Id.*

¶ 23    In so holding, the *Burns* court noted that the United States Supreme Court had stated in *Heller* that nothing in that opinion " 'should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill.' " *Burns*, 2024 IL App (4th) 230428, ¶ 19 (quoting *Heller*, 552 U.S. at 626); see *McDonald v. Chicago*, 561 U.S. 742, 786 (2010)). The *Burns* court further noted that Justice Kavanaugh cited this portion of *Heller* in his concurrence in *Bruen*. *Burns*, 2024 IL App (4th) 230428, ¶ 18; see *Bruen*, 597 U.S. at 81 (Kavanaugh, J., concurring, joined by Roberts, C.J.). The *Burns* court found that "*Bruen* did nothing to contradict the [United States Supreme Court's] prior determinations that the second amendment protects the rights only of law-abiding citizens to bear arms and that states may prohibit the possession of weapons by felons." *Burns*, 2024 IL App (4th) 230428, ¶ 19.

¶ 24    While defendant does not address *Burns* in her brief, she notes that some courts "have taken the language in *Bruen* and *Heller* about 'law-abiding' citizens as a categorical approval of felon disarmament laws," and she argues against such a position. Defendant cites federal cases that have declined to interpret *Heller* and *Bruen* in this manner. See *Range v. Attorney General United States of America*, 69 F.4th 96, 103 (3d Cir. 2023), *cert. granted and judgment vacated by Garland v. Range*, 144 S. Ct. 2706 (2024) ("[W]e reject the Government's contention that only 'law-abiding, responsible citizens' are counted among 'the people' protected by the Second Amendment."); *Kanter v. Barr*, 919 F.3d 437, 445 (7th Cir. 2019), *abrogated by Bruen*.

¶ 25    Defendant also cites the First District's decision in *People v. Brooks*, 2023 IL App (1st) 200435, ¶¶ 88-89, in which the court rejected the argument that the defendant fell outside

the scope of the " 'the people' " who had the right to bear arms because he was a convicted felon. The *Brooks* court found the defendant's felony status was irrelevant at the first step of the *Bruen* analysis, which only asks whether the second amendment's plain text covers an individual's conduct. *Id.* ¶ 89. According to *Brooks*, a defendant's felon status only becomes relevant at the second step of the *Bruen* test—the historical-traditions analysis. *Id.* After conducting a historical-traditions analysis, the *Brooks* court concluded that "both the founding-era historical record and Supreme Court precedent support the ability of our legislature to prohibit firearm possession by people who have demonstrated disrespect for legal norms of society." (Internal quotation marks omitted.) *Id.* ¶ 100.

¶ 26 To the extent that *Brooks* and the federal authority cited by defendant are contrary to this court's holding in *Burns*, we decline to follow these cases. See *Deutsche Bank National Trust Co. v. Iordanov*, 2016 IL App (1st) 152656, ¶ 44 ("One district of the appellate court is not bound to follow the decision of another district when the district has made a determination of its own contrary to that of another district or there is a split of authority among districts."); *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 34 ("[O]ur cases and those of the appellate court have considered federal circuit court decisions persuasive, but not binding in the absence of a decision of the United States Supreme Court.").

¶ 27 Defendant argues that the United States Supreme Court's recent decision in *United States v. Rahimi*, 602 U.S. 680 (2024), in defendant's words, "rejected the notion that the Second Amendment allows restrictions aimed at citizens who are not 'law-abiding' or 'responsible.' " We disagree with defendant's interpretation of *Rahimi*. While the dissenting justice in *Rahimi* rejected the position that the second amendment applies to only law-abiding, responsible citizens (*id.* at 773-74 (Thomas, J., dissenting)), the majority opinion merely rejected

"the Government's contention that [the defendant] may be disarmed simply because he is not 'responsible.' " *Id.* at 701. The *Rahimi* majority found that "responsible" was a vague term, *Heller* and *Bruen* did not define this term, and *Heller* and *Bruen* "said nothing about the status of citizens who were not 'responsible.' " *Id.* at 701-02. The *Rahimi* majority did not address the question of whether felons could be disarmed on the basis that they were not law-abiding. Notably, however, the *Rahimi* court reiterated the Court's prior statement in *Heller* that prohibitions on the possession of firearms by felons were " 'presumptively lawful.' " *Id.* at 699 (quoting *Heller*, 554 U.S. at 626-27, n.26); see *People v. Thomas*, 2024 IL App (4th) 240315-U, ¶ 24. Accordingly, *Rahimi* does not necessitate a departure from our approach in *Burns*.

¶ 28    B. Whether Defendant's UPWF Conviction Violates the Illinois Constitution

¶ 29    Defendant argues that, even if we find the UPWF statute does not violate the second amendment to the United States Constitution, we should find that it is facially unconstitutional under article I, section 22 of the Illinois Constitution, which provides: "Subject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. Const. 1970., art. I, § 22.

¶ 30    Defendant contends the Illinois Constitution provides greater protections than the second amendment by "expanding the group subject to its protections to the 'individual citizen,' " which defendant claims is "meant to be broader than the Second Amendment's reference to 'the People.' " Defendant also argues that to the extent the Illinois Constitution limits the right to keep and bear arms by making the right subject to "the police power" (*id.*), such limitations can "go only as far as the historical limits the Supreme Court established in *Bruen*." Defendant contends that there is no body of historical regulation analogous to permanent, criminal bans on possession of firearms by convicted felons such that the UPWF

- 9 -

statute would be permissible under *Bruen*.

¶ 31        Though not cited by defendant, we considered and rejected a nearly identical argument that the UPWF statute facially violates article I, section 22 of the Illinois Constitution in *Burns*. We concluded that, even assuming the defendant was an "individual citizen" within the meaning of article I, section 22 (*id.*), prohibiting the possession of firearms by felons was a proper exercise of police power by the legislature. *Burns*, 2024 IL App (4th) 230428, ¶¶ 27-29; see *People v. Gustafson*, 2024 IL App (4th) 231444-U, ¶¶ 19-21 (holding that, pursuant to the reasoning in *Burns*, the armed habitual criminal statute did not facially violate article I, section 22 of the Illinois Constitution). We agree with the *Burns* court's reasoning and find defendant has failed to establish the UPWF statute facially violates article I, section 22 of the Illinois Constitution.

¶ 32                            III. CONCLUSION

¶ 33        For the reasons stated, we affirm the trial court's judgment.

¶ 34        Affirmed.