NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 240706-U

NO. 4-24-0706

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 31, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| JARIOUS BRUCE, | ) | No. 23CF287 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Katherine S. Gorman, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) Defendant failed to establish that the unlawful possession of a weapon by a felon statute (720 ILCS 5/24-1.1(a) (West 2022)) is facially unconstitutional under the second amendment to the United States Constitution (U.S. const., amend. II).

(2) The record refutes postplea counsel's facially compliant Illinois Supreme Court Rule 604(d) (eff. Dec. 7, 2023) certificate, requiring a remand for postplea proceedings in strict compliance with the rule.

¶ 2    Defendant, Jarious Bruce, pleaded guilty to one count of unlawful possession of a weapon by a felon (UPWF) (720 ILCS 5/24-1.1(a) (West 2022)) and was sentenced to eight years in prison. He appeals, arguing (1) the statute defining his charged offense is facially unconstitutional, (2) his postplea counsel failed to strictly comply with the requirements of Illinois Supreme Court Rule 604(d) (eff. Dec. 7, 2023), and (3) the trial court failed to conduct a preliminary *Krankel* inquiry (see *People v. Krankel*, 102 Ill. 2d 181 (1984)) into his *pro se*

complaint of ineffective assistance of counsel. We vacate the trial court's denial of defendant's postplea motion to withdraw his guilty plea and remand for strict compliance with the requirements of Rule 604(d).

¶ 3                                I. BACKGROUND

¶ 4        On April 13, 2023, the State charged defendant with UPWF (720 ILCS 5/24-1.1(a) (West 2022)), alleging he knowingly possessed a firearm after having been previously convicted of UPWF in Peoria County case No. 17-CF-50. Defendant appeared in court the same day, and the trial court appointed the public defender's office to represent him. Assistant public defender Syed Ahmad was present in court and argued on defendant's behalf regarding the issue of defendant's bond. Ultimately, the court found probable cause existed for defendant's detention and set his bond at $100,000, with 10% to apply.

¶ 5        On April 25, 2023, a grand jury returned a bill of indictment, also charging defendant with UPWF (*id.*). On April 27, 2023, defendant was arraigned on the indictment. Public defender Kevin Lowe appeared on defendant's behalf and noted attorney Jennifer Patton would be appointed to represent defendant.

¶ 6        On July 6, 2023, defendant appeared before the trial court with attorney Rachelle Roth. The court stated it had "been handed a proposed order continuing [the case] on defendant's motion." Addressing defendant, the court explained as follows:

"Anybody who has Jennifer Patton for a lawyer is probably going to be continued. She has a medical situation. She has a procedure, a surgery done. I'm not familiar with what it is.

She's going to be out for a while. So you need to be continued then so you'll no longer have that July 17th court date. Instead you'll have [a] December 7th

- 2 -

scheduling conference; December 18th jury trial."

Defendant asserted he understood the court's explanation and had no questions.

¶ 7        On October 25, 2023, defendant appeared in court with assistant public defender Jonathan McEldowney and pleaded guilty to the charged offense. At the hearing, the State set forth the terms of the parties' plea agreement, noting defendant agreed to plead guilty in exchange for an eight-year prison sentence and the dismissal of a related case against him, Peoria County case No. 23-MT-872. Upon inquiry by the trial court, defendant agreed with the State's recitation of the plea agreement and asserted that he had discussed the plea agreement with McEldowney, understood what he was agreeing to, and was satisfied with McEldowney's services.

¶ 8        The record reflects the trial court further admonished defendant regarding the applicable sentencing range and the rights he was giving up by pleading guilty. Defendant stated he understood the court's admonishments, and the State provided the following factual basis for the charged offense:

> "On April the 12th of 2023 officers from the Peoria Police Department responded to a ShotSpotter alert at 312 West McClure Avenue in Peoria. A vehicle driven by the defendant left the residence, fled from officers. The vehicle—officers gave chase. The vehicle crashed. The defendant then exited his vehicle and fled out on foot. Officers observed the defendant take something from his waist and toss it into a yard that he had run past.
>
> Officers later, after taking the defendant into custody, recovered a Glock 19 in the yard where they saw the defendant throw this object.
>
> Additionally, Your Honor, the State would introduce a certified copy of the defendant's prior conviction for [UPWF] in Peoria County, Case 17-CF-50."

¶ 9　　　　　　Following the State's factual basis, defendant denied that any promises had been made to him other than what was contained in the parties' agreement or that he was forced or threatened into pleading guilty. Upon further questioning by the trial court, defendant also stated that he understood the consequences of his plea. The court then accepted defendant's guilty plea, finding it was freely, voluntarily, and knowingly given.

¶ 10　　　　　　On November 22, 2023, defendant *pro se* filed a motion to vacate the judgment against him and to withdraw his guilty plea. He alleged he only agreed to plead guilty because he feared he would not receive a fair trial in Peoria County. Defendant asserted that he had been "put in the *** news paper [*sic*] and on the news for a shooting when [he] was only picked up for possession" and that the trial court set his bond at $100,000 because of a shooting. Defendant claimed he was innocent of the charged offense, asserting the facts alleged against him were not true. Further, he indicated that he had been held in custody and had no contact with his defense attorney, alleging as follows: "I *** was in the county [jail] from April 12, 2023 until October 20th 2023 [*sic*] without contact with my public defender."

¶ 11　　　　　　On April 5, 2024, attorney Patton filed an amended motion to withdraw the guilty plea on defendant's behalf. The amended motion alleged defendant (1) did not fully understand the consequences of his actions at the time of the plea, (2) had not fully considered the ramifications of the plea agreement at the time of the plea, (3) did not believe that he could obtain a fair trial on the charged offense "and thereby felt pressured into pleading guilty," and (4) maintained his innocence of the charged offense. The same date, Patton filed a Rule 604(d) certificate, certifying as follows:

　　　　　　"1. I have consulted with the Defendant in person, by mail, by phone, or by

　　　　　　electronic means to ascertain the defendant's contentions of error in the entry of the

plea of guilty and in the sentence[.]

      2. I have examined the trial courts [*sic*] file and report of proceedings of the plea of guilty.

      3. I have made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings."

¶ 12      On April 18, 2024, the trial court conducted a hearing on defendant's motion. At the hearing, Patton asserted she had no evidence to present and argued as follows:

      "Your Honor, this is a case that's outlined in the motion. *** The plea went, I would say, without any hitches. The question became after [defendant] pled guilty he brought it to my attention that he felt coerced into doing that because he didn't think he would receive a fair trial in Peoria County. That was the reason that he wants the Court to know that why he wants to withdraw his guilty plea. And, again, he would like to go back to—I had told him that he would go back to square one and we would begin this case again. And he understands that it would still be in Peoria County, but that he is willing to take his chances with getting a fair trial."

The State responded by arguing there was no valid basis upon which defendant could withdraw his guilty plea. It noted that the transcript of the plea hearing showed defendant was given proper admonishments, that he specifically denied that he felt forced or threatened into entering a guilty plea, and that he explicitly stated he understood both his plea and sentence.

¶ 13      The trial court denied defendant's motion to withdraw his guilty plea. It characterized defendant as having "a case of buyer's remorse" and noted the record showed he had been "asked several different times if [he] understood" his plea and that he had denied being forced or threatened into pleading guilty.

¶ 14    This appeal followed.

¶ 15                    II. ANALYSIS

¶ 16                    A. Facial Constitutional Challenge

¶ 17    On appeal, defendant first challenges the UPWF statute (720 ILCS 5/24-1.1(a) (West 2022)) as facially unconstitutional. He argues that, under the analytical framework for evaluating the constitutionality of firearm regulations set forth by the United States Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the statute violates the second amendment to the United States Constitution (U.S. Const., amend. II).

¶ 18    "Statutes are presumed constitutional, and the party challenging the constitutionality of a statute has the burden of clearly establishing its invalidity." *People v. Villareal*, 2023 IL 127318, ¶ 14. If reasonably possible, a reviewing court must "construe the statute in a way that preserves its constitutionality." *People v. Bochenek*, 2021 IL 125889, ¶ 10. "A party bringing a facial challenge to a statute faces a particularly heavy burden," in that he or she "must prove there is no set of circumstances under which the statute would be valid." *Villareal*, 2023 IL 127318, ¶ 14. Where a facial challenge has been raised, "[t]he particular facts related to the challenging party are irrelevant." *Bochenek*, 2021 IL 125889, ¶ 10.

¶ 19    The constitutionality of a statute presents a question of law and is subject to *de novo* review. *Villareal*, 2023 IL 127318, ¶ 14. Additionally, "a constitutional challenge to a criminal statute can be raised at any time." *In re J.W.*, 204 Ill. 2d 50, 61 (2003).

¶ 20    The second amendment of the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. The United States Supreme Court has recognized that the second and fourteenth amendments (U.S. Const., amends. II, XIV) "protect the

right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense," as well as "an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 597 U.S. at 8-10 (2022) (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742 (2010)).

¶ 21 "In *Bruen*, the Supreme Court announced a test for assessing the constitutional validity of laws seeking to regulate conduct protected by the second amendment." *People v. Burns*, 2024 IL App (4th) 230428, ¶ 15. It held that (1) "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct and (2) to justify its regulation "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " *Id.*

¶ 22 In this case, defendant argues both that (1) the plain text of the second amendment presumptively protects an individual's possession of a firearm, even when that individual is a felon, and (2) the State cannot show a historical analogue for a flat ban on felons possessing firearms. However, as defendant acknowledges on appeal, this court has rejected facial constitutional challenges to the UPWF statute. Notably, in *Burns*, 2024 IL App (4th) 230428, ¶ 21, we found that "*Bruen*'s historical-tradition test" applied solely to regulations affecting the possession of firearms by law-abiding citizens and stated as follows:

"As a felon, [the] defendant, by definition, is not a law-abiding citizen. Thus, [the] defendant cannot show that his conduct was presumptively protected by the second amendment, and therefore, he does not fall within the scope of *Bruen*. As a result, [the] defendant cannot show that [the UPWF statute] violates the second

- 7 -

amendment on its face under the *Bruen* framework."

See *People v. Gardner*, 2024 IL App (4th) 230443, ¶ 68 (relying on *Burns* and rejecting a defendant's facial challenge to the constitutionality of the UPWF statute); see also *People v. Dillard*, 2024 IL App (4th) 231090-U, ¶ 27 (same); *People v. Mallery*, 2024 IL App (4th) 231397-U, ¶¶ 22-26 (same); *People v. Pruitte*, 2024 IL App (4th) 240013-U, ¶¶ 34-36 (same); *People v. Johnson*, 2024 IL App (4th) 231251-U, ¶ 51 (same); *People v. Stokich*, 2024 IL App (4th) 240192-U, ¶¶ 42-45 (same); *People v. Gilbert*, 2024 IL App (4th) 231164-U, ¶ 33 (same).

¶ 23        Defendant requests that we reconsider our holding in *Burns*. However, in doing so, he reiterates arguments that this court has previously rejected and relies on case authority that we have declined to follow. See *Mallery*, 2024 IL App (4th) 231397-U, ¶¶ 24-26 (declining to follow case authority cited by the defendant to the extent such authority was contrary to our holding in *Burns*). Here, we see no reason to depart from our prior holdings and decline defendant's request for reconsideration of *Burns*.

¶ 24        Moreover, we note that defendant relies heavily on case authority that does not support his ultimate position on appeal. Defendant cites *People v. Brooks*, 2023 IL App (1st) 200435, ¶¶ 88-89, for its rejection of the argument that felons fall outside the scope of individuals protected by the second amendment. Although in *Brooks*, the First District found that the defendant's status as a felon was irrelevant to the first step of a *Bruen* analysis, *i.e.*, whether the second amendment's plain text covers an individual's conduct, it determined—under *Bruen*'s second step—that "both the founding-era historical record and Supreme Court precedent support the ability of our legislature to prohibit firearm possession by people who have demonstrated disrespect for legal norms of society." *Id.* ¶ 100. The court concluded that because the defendant was a convicted felon, he was not a law-abiding citizen, and it rejected his contention that the

armed habitual criminal statute that prohibited his possession of a firearm was unconstitutional as it applied to him. *Id.*

¶ 25 We continue to adhere to our holding in *Burns*. Accordingly, we find defendant has failed to establish a meritorious claim that the UPWF statute is facially unconstitutional under the second amendment.

¶ 26 B. Rule 604(d) Compliance

¶ 27 Defendant next argues that Patton, as his postplea counsel, failed to comply with the requirements of Rule 604(d). He asserts that although Patton filed a facially valid certificate under the rule, the record refutes her certification that she made any necessary amendments to his postplea motion to adequately present his claims of error. Defendant complains Patton failed to attach "affidavits or evidentiary documents" to the amended motion to support matters not of record and that she presented no evidence at the hearing on the motion. He asks this court to remand the matter for new postplea proceedings that strictly comply with Rule 604(d).

¶ 28 "Rule 604(d) governs the procedure to be followed when a defendant wishes to appeal from a judgment entered upon a guilty plea." *In re H.L.*, 2015 IL 118529, ¶ 7. Under the rule, postplea motions must be in writing and "state the grounds therefor." Ill. S. Ct. R. 604(d) (eff. Dec. 7, 2023).

> "When the motion is based on facts that do not appear of record it shall be supported by affidavit unless the defendant is filing the motion *pro se* from a correctional institution, in which case the defendant may submit, in lieu of an affidavit, a certification as provided in section 1-109 of the Code of Civil Procedure." *Id.* (citing 735 ILCS 5/1-109 (West 2022)).

¶ 29 Rule 604(d) also requires that a defendant's attorney file a certificate with the trial

court, asserting that the attorney has (1) consulted with the defendant by phone, mail, electronic means, or in person to ascertain the defendant's contentions of error in the sentence and the entry of the guilty plea, (2) examined the trial court file and the report of proceedings of both the guilty plea hearing and the sentencing hearing, and (3) "made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. Dec. 7, 2023). The purpose of the rule is to ensure that before an appeal, the trial judge who presided over the guilty plea proceedings and sentencing is " 'given the opportunity to hear the allegations of improprieties that took place outside the official proceedings and *dehors* the record, but nevertheless were unwittingly given sanction in the courtroom.' " *H.L.*, 2015 IL 118529, ¶ 9 (quoting *People v. Wilk*, 124 Ill. 2d 93, 104 (1988)).

¶ 30 Postplea counsel must strictly comply with Rule 604(d)'s provisions, and "the failure to do so requires a remand to the circuit court for the filing of a new motion to withdraw guilty plea or to reconsider sentence and a new hearing on the motion." (Internal quotation marks omitted.) *People v. Gorss*, 2022 IL 126464, ¶ 19. "Strict compliance requires counsel to prepare a certificate that meets the content requirements of the rule and to file the certificate with the trial court." *H.L.*, 2015 IL 118529, ¶ 25. Further, even a facially valid certificate may be refuted by the record. *People v. Curtis*, 2021 IL App (4th) 190658, ¶ 36; see *People v. Winston*, 2020 IL App (2d) 180289, ¶ 14 ("[E]ven when the certificate is valid on its face, a remand will be necessary if the record refutes the certificate."). "Whether counsel complied with Rule 604(d) is a legal question that we review *de novo*." *Gorss*, 2022 IL 126464, ¶ 10.

¶ 31 "A defendant has no absolute right to withdraw his guilty plea" and, instead, "must show a manifest injustice under the facts involved." *People v. Hughes*, 2012 IL 112817, ¶ 32. "Withdrawal is appropriate where the plea was entered through a misapprehension of the facts or

of the law or where there is doubt as to the guilt of the accused and justice would be better served through a trial." *Id.*

¶ 32　　　To support his contentions on appeal, defendant relies on *People v. Bridges*, 2017 IL App (2d) 150718. There, the Second District determined the record refuted postplea counsel's certification that she made necessary amendments to the defendant's *pro se* motion to withdraw his guilty plea. *Id.* ¶ 9. The court noted that in an amended motion, counsel added new, detailed allegations that were not supported by the record. *Id.* However, contrary to the requirements of Rule 604(d), counsel failed to attach an affidavit to the motion substantiating the new allegations. *Id.* The court further stated as follows:

> "Counsel not only failed to attach an affidavit but also failed to present [the] defendant's testimony or any other evidence in support of [the] defendant's motion. The trial court thus had no basis for deciding the motion other than its own recollection of [the] defendant's demeanor during the plea proceedings." *Id.*

¶ 33　　　Here, the parties do not dispute that Patton filed a Rule 604(d) certificate that met the technical requirements of the rule. However, as stated, defendant argues the record refutes Patton's certification because she failed to support defendant's claims with any evidence. We agree.

¶ 34　　　The amended motion to withdraw defendant's guilty plea set forth claims that defendant (1) did not fully understand the consequences or ramifications of his plea, (2) was pressured into pleading guilty because he did not believe he could obtain a fair trial, and (3) maintained his innocence. None of these claims were supported by the existing record. However, counsel failed to offer any evidentiary support for the claims she advanced and, ultimately, did not develop them beyond conclusory allegations. As noted, Rule 604(d) requires

that a motion based on facts that are not of record to be supported by affidavit. Ill. S. Ct. R. 604(d) (eff. Dec. 7, 2023). In this instance, no affidavit or other evidentiary support was attached to the amended motion. Additionally, although defendant's *pro se* motion contained two of the same grounds for withdrawal as the amended motion, the *pro se* motion was similarly unsupported. See *People v. Geer*, 2023 IL App (5th) 220069-U, ¶ 22 ("Presumably, in bringing [the defendant's claim of innocence] to the trial court, counsel had some evidentiary support for this claim. Since that support is not contained in the record, counsel was obligated to attach an affidavit substantiating the defendant's claim *** to strictly comply with Rule 604(d).").

¶ 35 We note this court has held that defects in postplea pleadings do not require a remand for further proceedings where postplea counsel has filed "a facially compliant Rule 604(d) certificate and the trial court determines after a full and fair hearing that the defendant's claims are meritless." *People v. Brown*, 2023 IL App (4th) 220573, ¶ 50. However, here, the record fails to reflect that any of the claims in defendant's amended motion were fully and fairly addressed at the postplea hearing. Instead, at the hearing, Patton declined to present any evidence or call any witnesses on defendant's behalf, stating she "simply ha[d] argument." She then specifically referenced only one of the claims in defendant's amended motion, asserting, without elaboration, that defendant "felt coerced into [pleading guilty] because he didn't think he would receive a fair trial in Peoria County." Ultimately, no evidence and no developed argument was presented to support any of the claims in defendant's amended motion to withdraw his guilty plea.

¶ 36 On appeal, the State acknowledges that Patton "did not add any support or argument to defendant's motion." Nevertheless, it argues her facially compliant Rule 604(d) certificate is not refuted by the record and that the record, instead, "steadfastly rebuts" claims that defendant misunderstood the ramifications of his guilty plea, was coerced into pleading guilty, or was

actually innocent of the charged offense. The State maintains that the transcript of the plea hearing is conclusive as to each claim, showing defendant knowingly, voluntarily, and intelligently pleaded guilty. The State's argument is essentially one that defendant's postplea claims lack merit. However, the ultimate merit of a defendant's claims have "no bearing on whether counsel complied with Rule 604(d)." *Winston*, 2020 IL App (2d) 180289, ¶ 18.

¶ 37        In this case, Patton advanced claims on defendant's behalf in an amended motion to withdraw his guilty plea, including one claim not contained within defendant's original *pro se* motion. However, she failed to provide any factual or evidentiary support for the claims she advanced, nor did she present any evidence or developed argument regarding those claims at the postplea hearing. Like in *Bridges*, the record undermines Patton's certification that she made necessary amendments to defendant's *pro se* motion to withdraw his guilty plea. Accordingly, we vacate the trial court's denial of defendant's motion to withdraw his guilty plea and remand for (1) the filing of a new Rule 604(d) certificate, (2) the opportunity for defendant to file a new motion to withdraw his guilty plea if counsel deems it necessary, and (3) a new motion hearing.

¶ 38                                C. *Krankel*

¶ 39        Defendant also argues the trial court improperly failed to conduct a *Krankel* inquiry into his *pro se* postplea allegation of ineffective assistance of counsel. Specifically, defendant contends he raised an ineffective-assistance claim in his *pro se* motion to withdraw his guilty plea through his assertion that he "was in the county [jail] from April 12, 2023 until October 20th 2023 [*sic*] without contact with [his] public defender."

¶ 40        A *Krankel* inquiry is triggered "when a defendant brings a clear claim asserting ineffective assistance of counsel, either orally or in writing," to the trial court's attention. *People v. Ayres*, 2017 IL 120071, ¶ 18. "[T]he goal of any *Krankel* proceeding is to facilitate the trial

court's full consideration of a defendant's *pro se* claim and thereby potentially limit issues on appeal." *Id.* ¶ 13. When a *pro se* posttrial ineffective-assistance claim is made, the following procedure is required:

> "[T]he trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed." *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003).

¶ 41 Here, the parties dispute whether defendant brought a clear ineffective-assistance-of-counsel claim sufficient to trigger a *Krankel* inquiry. However, we find it unnecessary to resolve the parties' dispute in this appeal because a remand is otherwise required due to defendant's Rule 604(d) claim. Under such circumstances, "remand will provide the trial court and the parties with an ample opportunity to clarify defendant's view of the representation [he] received, at which point the trial court can determine whether a *Krankel* inquiry is necessary." *Winston*, 2020 IL App (2d) 180289, ¶ 20 (declining to decide the defendant's *Krankel* claim on review where a remand for compliance with Rule 604(d) was required).

¶ 42                                III. CONCLUSION

¶ 43 For the reasons stated, we vacate the trial court's judgment denying defendant's motion to withdraw his guilty plea and remand for further postplea proceedings in accordance with this decision.

¶ 44 Vacated and remanded with directions.